Filed 1/21/15; pub. order 2/13/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TONY NEALY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SANTA MONICA,<br><br>    Defendant and Respondent. | B246634<br><br>(Los Angeles County<br>Super. Ct. No. BC454516) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary Ann Murphy, Judge. Affirmed.

Law Offices of Stephen A. Ebner, Stephen A. Ebner; Law Offices of Stephen Love and Stephen Love for Plaintiff and Appellant.

Marsha Jones Moutrie, City Attorney, Joseph Lawrence, Assistant City Attorney, Meishya Yang and Carol Ann Rohr, Deputy City Attorneys, for Defendant and Respondent.

\*\*\*\*\*\*\*\*\*\*

Appellant Tony Nealy brought this action under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) against his employer, the City of Santa Monica (the City), for disability discrimination, failure to provide reasonable accommodation, failure to engage in the interactive process, and retaliation. Nealy's disability arose as a result of knee injuries while working for the City. The trial court granted the City's motion for summary judgment. We find no triable issues of material fact and affirm.

## FACTS AND PROCEDURE

### 1. Nealy's Knee Injury in 2003

Nealy began his employment with the City in 1996 as motor coach cleaner in the transportation department. In 1997, he transferred departments and became a recycling worker, a position the City later retitled "solid waste equipment operator."

Nealy injured his right knee in July 2003 when his foot slipped as he was moving a large bin full of food waste. A doctor declared him temporarily totally disabled after his injury. He had knee surgeries in 2003 and 2004. Nealy's temporary disability extended to May 25, 2005, when his doctor, Dr. Arthur Harris, released him to "light duty" work with the restriction that he could not push large trash bins, which weighed 750 pounds empty and could weigh up to 1,200 pounds when full.

### 2. Accommodations Meeting in 2005

The City had an accommodations committee to assist it in providing reasonable accommodations to employees who needed them. The committee was made up of representatives from human resources, risk management, the city attorney's office, and the department that had an employee needing accommodation. Nealy and his legal representative met with the accommodations committee in July 2005. At the meeting, Nealy asked to be returned to the solid waste department in either a clerical position or as the operator of a type of refuse collection vehicle, the one-person automated side loader (automated side loader). He had operated the automated side loader many times before he injured his knee in 2003 and was familiar with it.

2

The committee advised Nealy the City would consider a lateral transfer or voluntary demotion. A committee member identified a vacant groundskeeper position. The City forwarded an essential job functions analysis (EFJA) for the groundskeeper position to Dr. Harris to see whether Nealy could safely perform the essential functions of the position. Dr. Harris approved the placement, and Nealy began working as a groundskeeper in October 2005.

### 3. *Accommodations Meeting in 2006 and Second Injury*

Nealy met with the accommodations committee again in February 2006 because he was having trouble performing some of the groundskeeper duties. Specifically, he was having trouble climbing or descending stairs with no railings. His knee would sometimes buckle in these situations. The committee agreed to update the EFJA for groundskeeper and forward the revised EFJA to Dr. Harris for his review. In the meantime, Nealy's supervisor said he would limit Nealy's assignments until the issue was resolved. In March 2006, Dr. Harris reviewed the revised EFJA and opined Nealy could perform the groundskeeper position without restrictions.

Nevertheless, a committee member initiated efforts to find Nealy an alternative position as an equipment operator in his former department. In April 2006, the committee member requested an EFJA for an equipment operator position in street sweeping. Dr. Harris reviewed this EFJA and opined Nealy could not perform one essential job function of the position, that of emptying trash cans by hand, which could weigh anywhere from 25 to 60 pounds. The position required emptying 240 trash cans, twice a day on the 3rd Street Promenade or 400 trash cans citywide.

On or around August 1, 2006, Nealy was seen at a hospital emergency room for lower back pain. Nealy indicated he had injured himself on the job. He was on a small tractor in a baseball field, and when he stepped off the tractor, his knee buckled and he fell to the ground. He sustained an injury to his lower back. Dr. Harris declared him temporarily totally disabled for a few weeks and then cleared him to return to work on August 14, 2006, with restrictions. He was permitted to do "light duty, semi-sedentary office work," but if such work was not available, Dr. Harris indicated Nealy should

3

continue to be considered temporarily totally disabled. The City did not have any semi-sedentary office work available for Nealy, and he remained off work as temporarily totally disabled. Nealy never did return to work after his August 1, 2006 emergency room visit.

### 4. *Accommodations Meeting in 2008*

Nealy had a workers' compensation claim pending with the City. The agreed medical examiner in that case was Dr. Mitchel Silverman. Dr. Silverman issued a report in September 2008 in which he opined: "He [Nealy] can ambulate short distances. He should not do prolonged walking or prolonged standing of more than forty-five minutes out of every hour. He should avoid bending, stooping, squatting, and kneeling regarding the right knee. He should avoid very heavy lifting regarding the lumbar spine. [¶] He could return to the job he wants to perform, that is, sitting in a truck and operating hand controls, although pushing trash bins weighing 750 pounds or greater is not possible. . . . [¶] If modified activity driving an automated trash truck is available, he could return to those activities immediately." Dr. Silverman issued a supplemental report in November 2008 in which he opined another knee surgery might be required.

Nealy met with the accommodations committee again in December 2008. The committee and Nealy discussed his limitations and agreed he could not return to the groundskeeper position. Nealy expressed his wish to return to a solid waste equipment operator position. Committee members expressed concerns about the demands of the job and his limitations. Specifically, workers who operated two-person vehicles alternated duties and assisted each other by pushing trash bins, and those who operated one-person vehicles sometimes needed to exit the vehicles and move trash bins not accessible to the automated lift. One committee member also expressed concern about the demands placed on the knee simply from operating the vehicle. Nealy informed the committee that his doctor had recommended further knee surgery, and, if that occurred, he would be unable to return to work for an indefinite period. Nealy did, in fact, have a third knee surgery in September 2009.

4

## 5. *Accommodations Meeting in 2010 and Followup*

In April 2010, Dr. Silverman issued a report declaring Nealy "at maximum medical improvement." Dr. Silverman stated Nealy "should be precluded from kneeling, bending, stooping, squatting, walking over uneven terrain, running, and prolonged standing relative to the right knee," as well as climbing and heavy lifting. He opined Nealy could return to work with these restrictions.

In preparation for another accommodations meeting with Nealy, the City engaged a disability consulting firm (Monjaras & Wismeyer Group (Monjaras)) to facilitate the process and prepare an EFJA for the position of solid waste equipment operator. Vanessa Tosti of Monjaras prepared the EFJA in June 2010. In creating the EFJA, Tosti visited the City's solid waste facility, observed various solid waste equipment, and interviewed three supervisory members of the solid waste department. She also referred to the City's existing job description. The three supervisory employees and the City's human resources manager signed off on the EFJA Tosti prepared.

The City scheduled the accommodations meeting for July 19, 2010. Prior to the meeting, Monjaras sent Nealy the EFJA for solid waste equipment operator. Among other things, the EFJA indicated solid waste equipment operators were required to operate four different types of equipment, including the automated side loader. The City's written job description for the position also noted the operation of several different types of equipment among the position's "major duties." The EFJA identified eight essential functions of the job: (1) "refuse and recyclable collection/disposal duties," (2) "driving/equipment operation," (3) "equipment maintenance/inspection," (4) communication/customer service/liaison," (5) "records/logs," (6) "heavy lifting," (7) "training duties," and (8) "attendance of meetings/trainings." Under each essential function, it listed a paragraph or so of specific duties required for the job function. For example, under the job function "equipment maintenance/inspection," the operator performed daily pre- and posttrip inspections of the vehicle, swept and vacuumed the interior of the vehicle, and emptied trash and debris from the bulkhead of the vehicle.

Present at the July 2010 accommodations meeting were Nealy and his legal representative, a resource recovery and recycling manager for the City, a resource recovery and recycling collections superintendent for the City, a deputy city attorney, a workers' compensation administrator, a risk manager, and a human resources manager. At the meeting, Nealy expressed his desire to return to the solid waste equipment operator position and said he did not necessarily agree with all of Dr. Silverman's restrictions. The City advised him that it was bound to comply with the restrictions imposed by Dr. Silverman, but it encouraged him to discuss with his attorney the possibility of having Dr. Silverman modify the restrictions, if Nealy believed he could do some of the restricted activities safely. The City never received notification that Dr. Silverman had modified Nealy's restrictions.

The City identified numerous job duties under the essential functions that it believed Nealy could not perform, based on the restrictions that he could not kneel on the right knee, bend the right knee, squat, stoop, climb, walk on uneven ground, and lift heavy objects. These duties included clearing debris and trash from the hopper of vehicles; cleaning the bulkhead of vehicles; repairing wheels on trash bins; looking under vehicles during pre- and posttrip inspections; vacuuming and washing equipment; pushing trash bins through walkways or alleys; retrieving bulk items that people may have left outside of bins, such as furniture or appliances; walking over areas that may include ramps, broken concrete or asphalt (uneven ground); climbing three steps to get into vehicles; and climbing a ladder to access the bulkhead of vehicles. After looking at Nealy's restrictions and the essential functions of the solid waste equipment operator, the City said his restrictions were so significant that it could not find a way to reasonably accommodate the position.

The committee then discussed reassigning Nealy to an alternative vacant position. Prior to the meeting, the City identified its vacant positions. The City identified one vacant position that was not a promotion, a city planning staff assistant, and three vacant positions that were considered promotions (transportation engineer, transportation planning associate, and firefighter recruit). Nealy said he was interested in the position of

6

city planning staff assistant. The City gave Nealy until July 26, 2010, to submit any applications, and if he did not submit any or the City determined it could not provide him with an alternative position, the City would submit a disability retirement application to CalPERS on his behalf. The City advised Nealy that it posted all open positions on the City's website. It encouraged him to monitor the website and inform human resources if he was interested in any posted positions.

Nealy submitted an application for city planning staff assistant. The City's human resources manager determined he did not meet the minimum qualifications for the position in that he did not have two years of recent (within the last five years) paid work experience performing clerical support duties.

On or about August 3, 2010, the City sent Nealy a letter stating it was unable to provide him with reasonable accommodation into an alternative position because he was not minimally qualified for the only position available that was not a promotion. The City advised him it would be extending his unpaid leave of absence while it completed his employer-generated CalPERS disability retirement application.

The City filed the disability retirement application in September 2010. Nealy also submitted an application for the position of revenue collections assistant that month. He successfully passed the application process but did not pass the written examination for the position.

In July 2011, CalPERS notified the City it had canceled the disability retirement application for Nealy based on Nealy's failure to submit necessary information.

### 6. The Instant Lawsuit

Nealy filed a complaint with the California Department of Fair Employment and Housing (DFEH) on January 19, 2011, and obtained a right-to-sue notice on that date. He then filed the instant lawsuit against the City on February 7, 2011. The complaint alleges Nealy became disabled following a work-related injury in July 2003, and as a result of this injury, his physician placed him on medical disability. It also alleges Dr. Silverman performed an exam in his worker's compensation case and issued a report in April 2010 containing work restrictions. Further, it alleges an accommodations meeting

7

occurred in 2010 during which Nealy expressed his desire and ability to return to his old position, but the City refused to reinstate him with or without accommodation, find him an alternative position, or engage in a continuing interactive process, thus effectively terminating his employment.

The City moved for summary judgment and the court granted the motion in November 2012. The court entered judgment for the City on all four causes of action in the complaint (disability discrimination, failure to provide reasonable accommodation, failure to engage in the interactive process, and retaliation) on November 14, 2012. Nealy filed a timely notice of appeal from the judgment.

### 7. *Nealy's Worker's Compensation Award*

In 2011, Nealy's workers' compensation claim proceeded to hearing before the Workers' Compensation Appeals Board. The workers' compensation administrative law judge (ALJ) issued his findings and award in October 2011. The ALJ found Nealy had sustained combined permanent disability to his right knee and lower back of 40 percent after apportionment. He also found Nealy was entitled to an unapportioned award of permanent disability for his right knee. The ALJ awarded Nealy $36,260 in disability indemnity.

### STANDARD OF REVIEW

A court shall grant a motion for summary judgment if all the papers show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) As the party moving for summary judgment, the employer in a FEHA action has the burden of establishing either (1) one or more elements of the employee's cause of action cannot be established, or (2) a complete affirmative defense to the cause of action exists. (Code Civ. Proc., § 437c, subds. (*o*)(1), (2), (p)(2).) To demonstrate the elements of a cause of action cannot be established, the employer may show the employee does not possess evidence needed to support a prima facie case and also cannot reasonably obtain the needed evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.) The employer may also, but need not, present evidence conclusively negating an element of the cause of action. (*Ibid.*) Once the

8

employer has met its initial burden, the burden shifts to the employee to produce evidence showing a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal from summary judgment, we review the record de novo and must independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler v. Advanced Group 400, supra*, p. 768.)

## DISCUSSION

FEHA prohibits several employment practices relating to physical disabilities. First, it prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees because of their physical disabilities. (Gov. Code, § 12940, subd. (a).) Second, it prohibits employers from failing to make reasonable accommodation for the known physical disabilities of employees. (*Id.*, subd. (m).) Third, it prohibits them from failing to engage in a timely and good faith interactive process with employees to determine effective reasonable accommodations. (*Id.*, subd. (n).) Fourth, it prohibits them from retaliating against employees for opposing practices forbidden by FEHA. (*Id.*, subd. (h).) Separate causes of action exist for each of these unlawful practices. (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 987; *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.) We first address the City's statute of limitations argument, then take each cause of action in turn.

## 1. *Statute of Limitations*

Preliminarily, the City argues the statute of limitations bars Nealy's causes of action to the extent they are based on conduct occurring before January 19, 2010. The trial court agreed with the City that Nealy could not recover for conduct before January 19, 2010. Nealy has not demonstrated the trial court erred.

Nealy was required to file an administrative complaint with the DFEH and obtain a right-to-sue notice before bringing this action. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.) With some statutory exceptions not relevant here, the

FEHA limitations period for filing an administrative complaint with the DFEH is one year from the date on which the alleged unlawful practice occurred. (Gov. Code, § 12960, subd. (d).) Nealy filed his administrative complaint and obtained the right-to-sue notice on January 19, 2011. Unless some exception applies, Nealy cannot recover for alleged practices occurring before January 19, 2010.

For the first time on appeal, Nealy contends the equitable exception known as the "continuing violation doctrine" applies. Under this doctrine, the employer is liable for acts falling outside the limitations period when the acts are part of a continuing violation of the employee's FEHA rights. The employer's acts constitute a continuing violation when they "(1) [are] sufficiently similar in kind—recognizing . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823.) "'[P]ermanence' in the context of an ongoing process of accommodation of disability, or ongoing disability harassment, should properly be understood to mean the following: that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Ibid.*)

When the City made this statute of limitations argument below, Nealy failed to respond to it in his opposition or at the hearing, and as we noted, the trial court granted the City's motion based in part on this issue. On appeal, Nealy's argument consists of defining the continuing violation exception, asserting the City failed to properly accommodate him from August 2006 onward, and arguing in a conclusory manner that "there is evidence from which the trier of fact could reasonably conclude" the exception applies. He makes no attempt to show how the City's acts from August 2006 to 2010 were "sufficiently similar in kind," that they "occurred with reasonable frequency," or that the pre-2010 acts did not "acquire[] a degree of permanence" before 2010. Thus, he has not demonstrated the trial court erred. (*Claudio v. Regents of University of California*

10

(2005) 134 Cal.App.4th 224, 230; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [even under de novo summary judgment review, our review is limited to issues adequately raised and supported in the appellant's brief ].) "The fact that we review de novo a grant of summary judgment does not mean that the trial court is a potted plant in that process." (*Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 791.) "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . ." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)

There is no dispute Nealy filed his administrative complaint on January 19, 2010, and moreover, that the relevant statute of limitations is one year. Nealy fails to demonstrate the elements of the continuing violation exception were met here, and we need not develop his argument for him. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

### 2. Reasonable Accommodation Cause of Action

A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974 (*Nadaf-Rahrov*).) FEHA requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation. (Gov. Code, § 12940, subd. (m).) The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192; *Nadaf-Rahrov, supra*, at p. 977.)

The City focuses on the second element and argues it was undisputed Nealy could not perform the essential functions of a solid waste equipment operator, with or without

11

reasonable accommodation. Nealy argues there is a triable issue of material fact as to the essential functions of the position. He asserts one of the City's identified essential functions was, in fact, nonessential. He also asserts there are triable issues on whether reasonable accommodations would have allowed him to perform the essential functions of the job and whether reassignment was available. We hold the City's undisputed evidence entitled it to summary judgment on this cause of action.

### a. *Nealy's Disagreement with the Essential Functions*

"'Essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. 'Essential functions' does not include the marginal functions of the position." (Gov. Code, § 12926, subd. (f).) "'Marginal functions' of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." (Cal. Code Regs., tit. 2, § 11065, subd. (e)(3).) "A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following: [¶] (A) . . . [T]he reason the position exists is to perform that function. [¶] (B) . . . [T]he limited number of employees available among whom the performance of that job function can be distributed. [¶] [And] (C) . . . [T]he incumbent in the position is hired for his or her expertise or ability to perform the particular [highly specialized] function." (Gov. Code, § 12926, subd. (f)(1); Cal. Code. Regs., tit. 2, § 11065, subd. (e)(1).)

The City maintains that the "driving/equipment operation" essential function of the position required the ability to operate at least four different types of refuse collection vehicles—the automated side loader, a two-person front loader, a two-person rear loader, and a one-person bin truck that accompanied the rear loader. Nealy asserts the ability to operate all four vehicles is not essential; he need only be able to operate one type of vehicle, the automated side loader. This is important, he contends, because the automated side loader limited the physical demands placed on him.

The City's evidence indicated all solid waste equipment operators were required to operate all four vehicles because the operators needed to fill in for one another when

12

someone was absent from work. If an operator of a two-person vehicle was absent, the City would often need to assign an operator of an automated side loader to fill in. Moreover, all operators were required to operate all vehicles because, in the event of a natural disaster, the City would need operators to collect debris. To do this, they would likely need to drive the bigger two-person vehicles that had the capacity to hold large debris, not the automated side loaders.

Even if we assume for the sake of argument that Nealy is correct, this dispute presents no triable issue of material fact. (Code Civ. Proc., § 437c, subd. (c).) The dispute relates solely to the "driving/equipment operation" essential function of the job. Nealy focuses on this essential function to the exclusion of all others, but there were numerous other essential functions. The other duties the City identified as problematic for Nealy given his restrictions fall under other essential functions such as "refuse and recyclable collection/disposal duties," "equipment maintenance/inspection," and "heavy lifting." The fact that one essential function may be up for debate does not preclude summary judgment if the employee cannot perform other essential functions even with accommodation. We turn now to some of those other essential functions and whether reasonable accommodations were possible.

### b. Potential Reasonable Accommodations

Reasonable accommodations may include, among other things, job restructuring or permitting an alteration of when and/or how an essential function is performed. (Gov. Code, § 12926, subd. (p)(2); Cal. Code Regs., tit. 2, § 11065, subd. (p)(2)(G).) Job restructuring as a reasonable accommodation may include "reallocation or redistribution of non-essential job functions in a job with multiple responsibilities." (Cal. Code Regs., tit. 2, § 11065, subd. (p)(2)(E).) The reasonableness of an accommodation generally is a question of fact. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228, fn. 11.)

Nealy insists the City could have restructured his old position so that he did not have to perform heavy lifting or kneeling, which might have been possible by assigning him to the automated side loader permanently. But the City argues that eliminating heavy lifting and kneeling would be to eliminate essential functions of the job. It asserts

13

that eliminating an essential function is not a reasonable accommodation but is unreasonable as a matter of law.

We agree with the City that elimination of an essential function is not a reasonable accommodation. Indeed, permitting elimination would be at odds with the definition of the employee's prima facie case. The employee's case consists, in part, of showing he or she can perform the essential functions of the job with accommodation, not that an essential function can be eliminated altogether to suit his or her restrictions. (See *Dark v. Curry County* (9th Cir. 2006) 451 F.3d 1078, 1089 [Americans with Disabilities Act (ADA) "does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees"].)[1] The examples of reasonable accommodations in the relevant statutes and regulations include reallocating nonessential functions or modifying how or when an employee performs an essential function, but not eliminating essential functions altogether. FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions. (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 985.)

There is no dispute heavy lifting was an essential function of the solid waste equipment operator—even for those who operated the automated side loader. Nealy's deposition testimony and that of his supervisor suggest that while the automated side

---

[1] FEHA's accommodation requirements are modeled on the ADA. (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1224 (*Raine*).) "Like FEHA, the ADA requires an employer, in the absence of undue hardship, to make 'reasonable accommodation' for an employee or applicant with a known disability. (See 42 U.S.C. §§ 12111(8), (9) & 12112(a), (b)(5)(A).)" (*Raine, supra*, at p. 1224, fn. 6.) "[W]hen, as here, provisions of the two acts are similarly worded, federal decisions interpreting the ADA are instructive in applying FEHA." (*Id.* at p. 1226, fn. 7; see *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1384 (*Spitzer*) ["Resort to federal case law is particularly appropriate in connection with the duty to make reasonable accommodation because the provisions of the state regulations defining 'reasonable accommodation' under the FEHA are virtually identical to language of the ADA . . . ."].)

14

loader limited the manual duties of the operator, the vehicle did not eliminate the need for heavy lifting. As the name implies, the vehicle automatically lifted trash bins, emptied them into the hopper, and placed the bins back on the street. The operator did this from inside the cab with a toggle stick or buttons. But if the equipment did not grip the bin properly, the bin could fall into the hopper or onto the street. When this happened, the operator had the discretion to return to the City yard and obtain assistance to retreive the bin from the hopper or to call for assistance to right the bin on the street.

The EFJA identified "heavy lifting" as an essential function and described the heavy lifting duties as "lifting fallen bins and containers; lifting and carrying bulk items left out of bins and containers; and removing bins which have fallen into the hopper; and perform[ing] related duties as needed and assigned." Empty containers could weigh between 51 and 75 pounds, and full containers and bulk items such as furniture and appliances could weigh over 100 pounds.

Consistent with Nealy's evidence, the EFJA indicated solo operators would be required to lift, at most, 50 pounds unassisted, and they could "dispatch assistance" for lifting items over 50 pounds. Still, "assistance" with lifting heavier items did not mean the need for heavy lifting by the solo operator evaporated. Because no one was required to lift more than 50 pounds unassisted, the logical inference is that the solo operator merely became one member of a two-person (or more) team, both of whom working together lifted items over 50 pounds. Moreover, it is unclear how well Nealy would be able to assist with these heavy lifting tasks given his other restrictions. It seems likely these tasks would require either stooping,[2] squatting, bending the right knee, or kneeling, if not all of the above.

Besides heavy lifting, it is also undisputed that "equipment maintenance/inspection" was an essential function of the solid waste equipment operator.

---

[2] The verb "stoop" is defined as: "To bend the body forward and downward sometimes simultaneously bending the knees." (Webster's 3d New Internat. Dict. (2002) p. 2250, col. 2.)

15

There is no evidence Nealy would be exempt from this essential function if he drove only the automated side loader, as he wished. This function obligated operators to perform daily pre- and posttrip inspections of their vehicles and clear debris from the bulkhead of vehicles. Inspections required the operator to inspect areas underneath the vehicle. Nealy himself testified operators of the automated side loader conducted inspections of the vehicle, and the inspections would require bending over, at the very least, if not getting down on one's knees or back. Thus, his restrictions against stooping and bending the right knee would inhibit him from conducting inspections. Likewise, clearing debris from the bulkhead involved one of his restrictions. One had to climb a ladder to access the bulkhead. For that matter, merely getting into the vehicles—indisputably part of the "driving/equipment operation" essential function—required climbing a few steps.

In sum, there is no dispute heavy lifting was an essential function of a solid waste equipment operator. Nealy was absolutely precluded from heavy lifting by Dr. Silverman's restrictions. He does not propose any accommodation to the job other than eliminating the essential function of heavy lifting, which is not a reasonable accommodation. Further, equipment maintenance and inspection and driving a vehicle were indisputably essential functions. These things as well involved Nealy's restrictions.

The City was not required to eliminate essential functions from the job to accommodate him. We need not reach the details of the other essential functions the City contends Nealy could not perform. The inability to perform even one essential function is enough to move on to other alternatives, such as reassignment.

Reasonable accommodation may also include "reassignment to a vacant position" if the employee cannot perform the essential functions of his or her position even with accommodation. (Gov. Code, § 12926, subd. (p)(2); Cal. Code Regs., tit. 2, §§ 11065, subds. (p)(2)(N), 11068, subd. (d)(1)(A); *Raine, supra*, 135 Cal.App.4th at p. 1223.) FEHA requires the employer to offer the employee "comparable" or "lower graded" vacant positions for which he or she is qualified. (Cal. Code Regs., tit. 2, § 11068, subd. (d)(1), (2).) FEHA does not require a reassignment, however, if there is no vacant position for which the employee is qualified. (*Cuiellette v. City of Los Angeles* (2011)

16

194 Cal.App.4th 757, 767.)  Additionally, FEHA does not require the employer to promote the employee or create a new position for the employee to a greater extent than it would create a new position for any employee, regardless of disability.  (Cal. Code Regs., tit. 2, § 11068, subd. (d)(4); *Spitzer, supra*, 80 Cal.App.4th at p. 1389.)

Nealy contends the City could have offered him the city planning staff position or another clerical position as a reasonable accommodation.  He did not meet the qualifications for the city planning staff position, however, and the evidence is undisputed there were no other vacant positions for which he was qualified.  In cases when courts have found a triable issue on reassignment, the employees have adduced evidence obtained through discovery that vacant positions for which they were qualified existed during the relevant period, but the employer failed to offer the positions to them.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 968; *Spitzer, supra*, 80 Cal.App.4th at p. 1390.)  Nealy has not adduced any such evidence here to dispute the City's evidence that no other vacant positions for which he was qualified existed during the relevant period in 2010.  Under FEHA, the City was thus relieved of its duty to reassign Nealy.  (*Spitzer, supra*, 80 Cal.App.4th at p. 1389.)

To the extent Nealy claims the City had a duty to await a vacant position to arise, he is incorrect.  A finite leave of absence may be a reasonable accommodation to allow an employee time to recover, but FEHA does not require the employer to provide an indefinite leave of absence to await possible future vacancies.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 968; *Hanson v. Lucky Stores, Inc., supra*, 74 Cal.App.4th at p. 226.)

In short, an employer can prevail on summary judgment on a claim of failure to reasonably accommodate by establishing through undisputed facts that "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation . . . ."  (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.)  The City has done that here.  Its evidence established Nealy could not perform the essential functions of the solid waste equipment operator with reasonable

17

accommodation, and moreover, there were no vacant positions for which he was qualified. The burden then shifted to Nealy to produce evidence showing a triable issue of material fact. This he has not done. The trial court did not err in granting summary judgment on this cause of action.

### 3. *Disability Discrimination Cause of Action*

A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.) Once the employee establishes his or her prima facie case, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.) The employee may still defeat the employer's showing with evidence that the stated reason is pretextual, the employer acted with discriminatory animus, or other evidence permitting a reasonable trier of fact to conclude the employer intentionally discriminated. (*Ibid*.)

The City focuses again on the second element of the prima facie case, arguing Nealy cannot show he is a "qualified individual" within the meaning of FEHA. (*Green v. State of California* (2007) 42 Cal.4th 254, 260.) The showing required is identical to that required for a cause of action for failure to reasonably accommodate. That is, a qualified individual is someone who is able to perform the essential functions of his or her job, with or without reasonable accommodation. (*Id.* at p. 262.) FEHA permitted the City to discharge Nealy if he was unable to perform the essential functions of his job even with reasonable accommodations. (Gov. Code, § 12940, subd. (a)(1) ["This part does not prohibit an employer from . . . discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations . . . ."]; *Green v. State of California, supra*, at p. 262.)

We have already discussed the City's evidence that Nealy could not perform the essential functions of his job, with or without reasonable accommodation, and we need

18

not reiterate that discussion here. Suffice it to say the City has shown Nealy cannot establish one or more elements of his disability discrimination cause of action. The trial court did not err in granting summary judgment on this cause of action.

### 4. *Interactive Process Cause of Action*

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424, citing Gov. Code, § 12940, subd. (n).) FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195.)

To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1018 (*Scotch*); *Nadaf-Rahrov, supra*, at p. 984.) "An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because ""'[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have . . . .""'" (*Scotch, supra*, at p. 1018.) But the employee should be able to identify specific, available reasonable accommodations through the litigation process, and particularly by the time the parties have conducted discovery and reached the summary judgment stage. (*Id.* at p. 1019.)

In this case, it is undisputed the City convened a meeting of its accommodations committee after receiving Dr. Silverman's report on Nealy's restrictions in April 2010. The committee went through each of Nealy's restrictions and discussed them in relation to the essential functions of the solid waste equipment operator. The City also came prepared with a list of its vacant positions and informed Nealy of them.

The only accommodations Nealy argues should have been available are (1) restructuring his old job so that he did not lift heavy objects or kneel; (2) assigning him to the automated side loader permanently; (3) reassigning him to another position;

19

and (4) retraining. As we concluded above, the first two were not reasonable accommodations allowing him to perform the essential functions of the job, and the third was not reasonable because there were no vacant positions for which he was qualified. The fourth—retraining—does not assist Nealy. He provides absolutely no detail as to what type of retraining would have enabled him to perform the solid waste equipment operator job or some other vacant position. The bare assertion that the City should have provided retraining does not create a triable issue of fact.

The City has carried its burden by showing Nealy possesses no evidence of reasonable accommodations available at the time of the interactive process. The trial court did not err in granting summary judgment on this cause of action either.

## 5. *Retaliation Cause of Action*

To establish a prima facie case of retaliation under FEHA, "a plaintiff must show '(1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" (*Scotch, supra*, 173 Cal.App.4th at p. 1020.) The City contends Nealy cannot show he engaged in protected activity. We agree.

FEHA makes it unlawful for the employer to discharge or discriminate against an employee because he or she has "opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) Thus, protected activity takes the form of opposing any practices forbidden by FEHA or participating in any proceeding conducted by the DFEH or the State Fair Employment and Housing Council (FEHC). (Cal. Code Regs., tit. 2, §§ 11002, subds. (a), (b), 11021, subd. (a).)

Opposing practices forbidden by FEHA includes seeking the advice of the DFEH or FEHC; assisting or advising any person in seeking the advice of the DFEH or FEHC; opposing employment practices the employee reasonably believes to exist and believes to be a violation of FEHA; participating in an activity perceived by the employer as opposition to discrimination; or contacting, communicating with, or participating in the proceeding of a local human rights or civil rights agency regarding employment

20

discrimination.  (Cal. Code Regs., tit. 2, § 11021, subd. (a)(1).)  Participating in any proceeding conducted by the DFEH or FEHC includes contacting, communicating with, or participating in the proceedings of the DFEH or FEHC because of a good faith belief that the employer has violated FEHA; or involvement as a potential witness, which the employer perceives as participation in an activity of DFEH or FEHC.  (*Id.*, subd. (a)(2).)

But protected activity does not include a mere request for reasonable accommodation.  (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652 (*Rope*).)  Without more, exercising one's rights under FEHA to request reasonable accommodation or engage in the interactive process does not demonstrate some degree of opposition to or protest of unlawful conduct by the employer.  (*Id.* at pp. 652-653.)

Here, Nealy does not identify any activity that qualifies as protected activity.  He contends his protected activity was seeking the City's assistance to return to work—that is, seeking reasonable accommodation—and initiating the interactive process.  These acts alone do not amount to "oppos[ing] any practices forbidden under" FEHA or participating in DFEH or FEHC proceedings.  (Gov. Code, § 12940, subd. (h); *Rope, supra*, 220 Cal.App.4th at p. 652.)  If they did, this interpretation of protected activity "'would significantly blur and perhaps obliterate the distinction between an action for failure to accommodate or engage in the interactive process and retaliation.'"  (*Rope, supra*, at p. 653.)

Nealy's exercise of his right to request reasonable accommodation was not protected activity for purposes of a FEHA retaliation claim.  The trial court properly granted summary judgment on this cause of action.

## DISPOSITION

The judgment is affirmed.  The City shall recover costs on appeal.

21

FLIER, J.


WE CONCUR:      BIGELOW, P. J.


RUBIN, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TONY NEALY, | B246634 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC454516) |
| v. | |
| CITY OF SANTA MONICA, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:[*]

The opinion in the above-entitled matter filed on January 21, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

[*] BIGELOW, P. J.                RUBIN, J.                FLIER, J.

23