Filed 10/21/24  Torres v. Montebello Unified School District CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANA C. TORRES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MONTEBELLO UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | B326575<br><br>(Los Angeles County Super. Ct. No. 20STCV07153) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Affirmed.

Gusdorff Law, Janet Gusdorff; The Mathews Law Firm, Charles T. Mathews; Sottile Baltaxe, Michael F. Baltaxe and Timothy B. Sottile for Plaintiff and Appellant.

Fozi Dwork & Modafferi, Golnar J. Fozi and Daniel S. Modafferi for Defendant and Respondent.

# INTRODUCTION

Ana C. Torres appeals from the judgment following a jury verdict in favor of her former employer, Montebello Unified School District, on her causes of action for failure to make a reasonable accommodation for her disability, disability discrimination, and retaliation under the Fair Employment and Housing Act (FEHA). Torres argues that the trial court erred in instructing the jury on her cause of action for disability discrimination by not including the statutory definition of "essential functions," that the court's instruction on her retaliation cause of action conflicted with the special verdict form, and that substantial evidence did not support the jury's findings.

We conclude that, because Torres asked for the jury instructions she now challenges, she invited any error and cannot assert the argument on appeal and that in any event her argument lacks merit. We also conclude the evidence did not compel a finding in her favor on her causes of action. Therefore, we affirm.

# FACTS AND PROCEDURAL BACKGROUND

A. *Torres Works as an Office Assistant at Montebello High School*

The District hired Torres in 2005, and Torres became a full-time, year-round office assistant at Montebello High School in 2007. According to the District's job description, an office assistant performs a wide variety of tasks. These tasks, which will be relevant to whether Torres could do them with reasonable accommodation, included basic typing, routine office clerical duties, answering the telephone and taking messages, providing

2

information to parents and students, preparing tardy slips, opening and distributing mail, preparing and sorting outgoing mail, providing basic first aid to students, operating a computer and performing data entry, updating computer records, generating documents, and maintaining student and staff records, databases and files. Her job duties also included data entry in manual and computer logs and files; sorting, duplicating and filing a variety of District records and documents; ordering office and teaching supplies; receiving, sorting and distributing office and teaching supplies; checking in educational materials and books; receiving and recording fees and preparing receipts; shelving and distributing periodicals; and maintaining an inventory of classroom books. Other possible duties included scheduling meetings, assisting nutrition staff, performing lunch clerk duties (such as receiving payments, counting money, and generating daily cash reports), and assisting with student testing and classroom coverage. Torres stated she performed all of these tasks from the time she was hired in 2005 until she suffered a work-related injury in 2014.

After 2014 the school modified some of Torres's job responsibilities. Torres testified, however, she still performed a wide range of administrative tasks. For example, she collected student fines, student uniforms, money for teacher fundraisers, and library books and textbooks. She prepared registration materials every year for more than 3,000 students, which required her to review each student's class schedule, determine which students had fines to pay before they could register, and alphabetize the schedules by hand. Torres sometimes worked in the cafeteria at the cash register during lunch period, worked at after-school track meets using a stopwatch to keep time and

logging by hand the names of student athletes, and prepared attendance-related paperwork.

B. *Torres Suffers a Work-related Injury to Both Hands in 2014, and the District Provides Accommodations*

In May 2014 a doctor diagnosed Torres with trigger finger in her right index and middle fingers and her left middle finger.[1] The doctor released Torres to work with temporary work restrictions, including 20-minute-per-hour limits on using a keyboard and mouse, doing repetitive work with either hand, and gripping or grasping with either hand. The doctor also restricted Torres to lifting, carrying, pushing, or pulling no more than 10 pounds. The weight limit was subsequently reduced to five pounds.

---

[1] "Trigger finger" is a condition that "affects the fibrous flexor sheaths of the fingers or thumb within the palm. The affected sheath thickens and entraps the contained tendons, which become constricted at the site of entrapment . . . . The finger now snaps as the tendon nodule passes through the constriction on flexing the finger. The corresponding extensor muscle is insufficiently powerful to extend the affected finger. The patient does this passively, accompanied by a painful snap. Treatment frequently requires surgical division of the A1 pulley of the flexor sheath to relieve the stricture." (*Williams v. Metropolitan Life Ins. Co.* (4th Cir. 2010) 609 F.3d 622, 626, fn. 1; see *Ortiz v. Colvin* (W.D.N.Y. 2018) 298 F.Supp.3d 581, 588, fn. 9 ["Trigger finger is 'a condition in which the movement of the finger is arrested for a moment in flexion or extension and then continues with a jerk[.]'"].)

4

The school engaged in the interactive process with Torres and provided the accommodations she requested,[2] including an ergonomic mouse, keyboard, and chair; a telephone headset; an electric stapler; an electric hole puncher; and assistance from a teaching assistant to carry heavy items and stuff envelopes. The school allowed Torres to arrange her work activities so that she would not exceed the 20-minute task limitations and to load small quantities of paper (rather than full reams) into the copier and fax machines. Torres admitted, and several of the interactive conference notes indicated, her work restrictions impacted essential job functions such as operating the telephone switchboard; using a computer; lifting and carrying books, reams of paper, mail crates, and other office supplies; and preparing letters to students and parents. The school also noted that a teacher's assistant would perform some of Torres's job duties and that this accommodation was reasonable "at this time because TAs are available to provide assistance."

In May 2015 Torres developed trigger finger in her left index finger. Her condition did not improve, and by August 2016 her work restrictions included, in addition to the previous limitations, a prohibition on all gripping and grasping. Torres's work restrictions became permanent in 2016.

---

[2] When a District employee requested an accommodation for a disability, an administrator would handle the request informally at the work site. If the parties could not agree on an accommodation at the work site, the employee could submit a written request for a reasonable accommodation to the District.

In late 2016 Torres's doctor diagnosed her with bilateral carpal tunnel syndrome and radial styloid tenosynovitis.[3] Torres reported pain, swelling, and stiffness in her left and right hand joints. In April 2017 Torres was diagnosed with complex regional pain syndrome[4] and anxiety disorder.

### C. *Torres Falls at Work in November 2018, and the District Provides Temporary Accommodations*

On November 2, 2018 Torres fell at work and injured her right knee and right wrist. Although the injuries from the fall initially appeared minor, Torres's pain and other symptoms worsened over several weeks. Torres's doctors placed her on temporary total disability leave for 10 days.

Torres met regularly with the school's assistant principal, Dr. Phillip Nolasco, in November and December 2018 (and met once with the principal, Helen Meltzer) to discuss Torres's temporary disability, the work restrictions ordered by her physicians, and the accommodations she requested. The school

---

[3] "Radial styloid tenosynovitis, commonly called De Quervain's tenosynovitis, is an inflammation of the fluid-filled sheath that surrounds the tendons controlling the thumb." (*Campeggio v. Upper Pottsgrove Township* (E.D. Pa., Sept. 8, 2014, Civ. A. No. 14-1286) 2014 WL 4435396, p. 2, fn. 4.)

[4] Complex regional pain syndrome "has been described as pain 'out of proportion to the apparent injury or the physical findings,' resulting from some 'noxious event, trauma, or some sort of binding like casting.' It normally affects a region of the body and is accompanied by 'a continuous pain, frequently described as a burning pain, and the presence of hypersensitivity . . . .'" (*Garretson v. Harold I. Miller* (2002) 99 Cal.App.4th 563, 566.)

allowed Torres to wear supports on her right hand and right knee, to use a cane, to sit while working, and to elevate her right leg when seated.

D.     *Torres's Condition Worsens, and the School Places Her on Temporary Medical Leave as an Accommodation*

Torres saw a physician on January 14, 2019. Torres met with Dr. Nolasco on January 17, 2019 and requested disability accommodations that included wrist and knee braces, a cane as needed, a limit on using her right hand, and a limit on standing and walking. Dr. Nolasco approved Torres's requested accommodations and said the accommodations would be reevaluated on February 25, 2019.

On January 25, 2019 Torres saw Dr. Robert Spencer, a podiatrist, who prepared a lengthy written summary of his findings. Dr. Spencer stated Torres had "continued problems of her bilateral wrists, right knee, and bilateral ankles," including "symptomatic pain with weightbearing." Dr. Spencer found Torres had pain, swelling, "dysfunctionality," and weakness in both hands; radiating pain from her shoulders to her fingers, particularly on the right side; "numbness of the first, second, and third fingers"; and "significant pain to the thumb . . . with difficulty performing first and second digit pinching causing pain in that area significantly." Dr. Spencer reported that Torres continued "to show significant weakness to the right shoulder and the right hand and has pain to the grip. She is unable to close the hand without any great significance. Resistance to opening the fingers is also symptomatically painful . . . ." Dr. Spencer observed symptoms in Torres's lower extremities,

7

including swelling of both feet; difficulty and pain in both knees while walking, particularly on the right side; and instability and weakness of the right knee. Dr. Spencer's diagnoses included "sprain/strain of the shoulder," "carpal tunnel syndrome," "ulnar neuritis," "low back pain with radiculopathy," "right knee medial meniscus tear," "plantar fasciitis," "metatarsalgia," "possible forefoot neuroma," and "painful gait."

Dr. Spencer recommended physical therapy, acupuncture, pain management and hand specialists, and an MRI of the cervical spine to determine the cause of the radiating pain in Torres's shoulders. Dr. Spencer also recommended Torres return to his clinic for a follow-up visit in four weeks. Regarding Torres's 2014 injury, Dr. Spencer released Torres to work with the pre-existing restrictions of 20-minute-per-hour time limits on typing, filing, and repetitive work. The record does not contain a written work release with restrictions relating specifically to Torres's November 2018 injury, but Dr. Spencer testified that Torres was not permitted to grip or grasp anything in the workplace and that he did not feel additional restrictions were necessary because Torres generally sat down while working.

Torres met with Dr. Nolasco on January 25, 2019, after her visit with Dr. Spencer. Dr. Nolasco asked Torres to identify which job tasks she could perform at that time with accommodation. Torres did not respond. Dr. Nolasco observed that Torres could only type a maximum of 20 minutes per hour, could not stand or walk for long periods, could not grasp the telephone, and could not write because she could not grasp a pencil or pen. As a result, Torres was able to perform only a small percentage of her essential job functions. After conferring with the school principal and a representative from the District's

8

risk management department, Dr. Nolasco concluded Torres could not perform her job, or any other available District job, with reasonable accommodations. Dr. Nolasco placed Torres off work as an accommodation and to allow her condition to improve, and set a review date of February 25, 2019. Torres never requested a further interactive process meeting.

E. *A District Panel Agrees Torres Should Be Placed on Temporary Medical Leave as a Disability Accommodation*; *Torres Never Returns to Work*

Torres asked for a District-level meeting to review Dr. Nolasco's decision to place her off work. (She also claimed Dr. Nolasco terminated her employment at the January 25, 2019 meeting.) On February 7, 2019 Torres met with Dr. Nolasco, Principal Meltzer, two members of the District's risk management team, a representative from the District's human resources department, and two representatives from Torres's union. The District concluded it could not accommodate Torres's work restrictions at the school in her existing job or in a modified job.

Torres exhausted her paid leave benefits on June 25, 2019. Because Torres did not advise the District that she had been cleared to return to work, the District "resigned" Torres and placed her on a 39-month rehire list. Torres never gave the District a medical clearance to return to work, nor did she ever check the District's job postings to see if she qualified for an open position. In 2021 Torres filed for disability and non-disability retirement.

F.     *Torres Sues the District, Loses at Trial, and Appeals*

In February 2019 Torres requested and received an immediate right-to-sue letter from the Department of Fair Employment and Housing (now the Civil Rights Department).[5] Torres filed this action against the District, asserting causes of action for failure to reasonably accommodate a disability, disability discrimination, and retaliation under FEHA (Gov. Code, § 12940 et seq.).[6]

The case proceeded to a jury trial, and the jury found in favor of the District on all three of Torres's causes of action.  On her cause of action for failure to accommodate a disability, the jury found that Torres had a disability that limited her ability to work, that the District knew of Torres's disability, but that Torres was unable to perform her essential job duties with reasonable accommodation.  On Torres's cause of action for disability discrimination, the jury found that the District knew Torres had a disability that limited her ability to work, but that Torres was unable to perform her essential job duties with or without reasonable accommodation.  On her retaliation cause of action, the jury found Torres did not request a reasonable accommodation or did not complain the District was not

---

[5]     "On June 30, 2022, the former Department of Fair Employment and Housing was renamed the Civil Rights Department."  (*Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 73, fn. 4.)

[6]     Torres also asserted causes of action for failure to engage in a good faith interactive process and failure to prevent discrimination.  Torres dismissed those causes of action before trial.  Statutory references are to the Government Code.

reasonably accommodating her.  The trial court entered judgment on the jury's verdict.

Torres filed a motion for new trial and a motion for judgment notwithstanding the verdict.  Both motions were denied by operation of law.  Torres timely appealed.[7]

## DISCUSSION

A. *Torres's Claims of Instructional Error Are Barred by the Doctrine of Invited Error and Are Meritless*

"Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error."  (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212; see *Davis v. Harano* (2022) 79 Cal.App.5th 688, 692.)  "The invited error doctrine applies 'with particular force in the area of jury instructions.'"  (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653; see *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 592.)  Thus, an appellant may not seek to reverse a judgment by arguing the trial court erred in giving jury instructions the appellant requested.  (*Davis*, at p. 692.)

---

[7]  Torres appealed from the judgment, the order denying her motion for new trial, and the order denying her motion for judgment notwithstanding the verdict.  Because an order denying a motion for new trial is not appealable, we dismiss that portion of Torres's appeal.  (See *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 653.)  To the extent Torres challenges the court's order denying (by operation of law) her motion for a new trial, we review that order in her appeal from the judgment.  (See *ibid.*)

11

Torres asserts two claims of instructional error, both of which are barred by the doctrine of invited error. First, Torres argues the trial court erred in instructing the jury on the elements of her cause of action for disability discrimination. Torres concedes that the instruction correctly stated the law, but argues that the instruction was incomplete because it did not add the statutory definition of "essential functions" in section 12926, subdivision (f)(1). Because Torres invited any error by asking for the pattern jury instruction the trial court gave on this cause of action, CACI No. 2543, she cannot challenge the instruction on appeal. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 ["'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal."]; *Burch v. CertainTeed Corp.* (2019) 34 Cal.App.5th 341, 350 & fn. 6 [invited error applied where the parties jointly requested the CACI pattern jury instructions]; *Stevens v. Owens-Corning Fiberglas Corp.*, *supra*, 49 Cal.App.4th at p. 1653 ["The doctrine of invited error bars an appellant from attacking a verdict that resulted from a jury instruction given at the appellant's request."].)

Torres's challenge also lacks merit. Torres does not argue the trial court erred in refusing to give an instruction she requested. Instead, Torres argues that the instruction she proposed was incomplete and that the trial court should have modified the instruction. That is not the law. "'"Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities."'" (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1090.) "'A civil litigant must propose complete instructions in accordance with his or her theory of the

litigation and a trial court is not "obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken." [Citation.]' [Citation.] '[A] party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction.'" (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 655; see *Regalado v. Callaghan*, *supra*, 3 Cal.App.5th at p. 592.)

Second, Torres argues the trial court erred in instructing the jury on her retaliation cause of action. The court instructed the jury that Torres had to prove she "request[ed] accommodations for disability and/or complained about discrimination." Pointing to the part of the special verdict form that asked the jury whether Torres requested a "reasonable accommodation" or complained "about not being reasonably accommodated," Torres argues the jury may have been confused by the difference between the language of the instruction and the language of the special verdict form. Again, Torres invited the error by requesting the instruction and approving the special verdict form. (See *Davis v. Harano*, *supra*, 79 Cal.App.5th at p. 692 [where the parties jointly submitted the jury instructions and a special verdict form, the appellant could not argue an error in the instructions or the verdict form justified reversal].) And, as before, her argument lacks merit. There is no reasonable probability the jury was confused by the relatively minor language differences between the instruction and the verdict form.

13

B.   *The Evidence Did Not Compel a Verdict in Torres's Favor*

1.   *Standard of Review*

Torres argues that substantial evidence did not support the verdict.  But that is not the correct standard of review.

Where, as here, "'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)  Applying the substantial evidence standard of review would inappropriately allow "'an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case.'" (*Ibid.*)  Instead, when an appeal turns on the appellant's failure of proof, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Id.* at p. 466; see *Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 840.)[8]

---

[8]   To the extent Torres argues the trial court erred in denying her motion for judgment notwithstanding the verdict, the same standard applies.  (See *SwiftAir, LLC v. Southwest Airlines Co.* (2022) 77 Cal.App.5th 46, 59.)

14

### 2. *The Evidence Did Not Compel a Verdict for Torres on her Disability Causes of Action*

FEHA requires an employer to reasonably accommodate an employee's known physical disability unless doing so would cause an undue hardship to the employer. (§ 12940, subd. (m)(1); *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 714.) "The elements of a failure to accommodate claim are '"(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position [held or desired], and (3) the employer failed to reasonably accommodate the plaintiff's disability."'" (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 346; see *Atkins*, at p. 719; *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373.) "A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires." (*Nealy*, at p. 373; see *Atkins*, at p. 719.) FEHA does not require an employer to eliminate an essential function of an employee's position as an accommodation. (*Atkins*, at p. 719.) "The reasonableness of an accommodation is generally a question of fact." (*Nealy*, at p. 374; see *Atkins*, at p. 719.)

FEHA also makes it unlawful for an employer to discriminate against an employee because of the employee's physical disability. (§ 12940, subd. (a); *Atkins v. City of Los Angeles*, *supra*, 8 Cal.App.5th at p. 715.) To establish an employer has discriminated against an employee on the basis of a disability, the employee must prove he or she could perform the essential functions of the job with or without reasonable accommodation. (*Atkins*, at p. 716.)

15

On Torres's causes of action for failure to accommodate a disability and for discrimination on the basis of a disability, the jury found Torres failed to prove she could perform the essential functions of her job with reasonable accommodation. The evidence did not compel a contrary finding. Although Torres testified she could perform her job when the school placed her on a temporary medical leave, ample evidence contradicted her testimony. Most significantly, at the time Dr. Nolasco placed Torres on medical leave, Torres did not identify a single job task she could perform with a reasonable accommodation. And even with the school accommodating her disability, Torres missed nearly half of her workdays during the latter part of 2018 and in January 2019 due to disability-related medical leave and medical appointments.

Moreover, Dr. Spencer's report and his testimony confirmed Torres was unable to move her shoulders, hands, and fingers without substantial difficulty and extreme pain. Dr. Spencer noted Torres should not exceed the 20-minute-per-hour time limit on typing, filing, and repetitive work, and he anticipated Torres would not be able to perform even 20 minutes of those tasks at times. In addition, Dr. Spencer stated Torres should not grip or grasp *any* items in the workplace (including a pen or pencil), which meant Torres could not perform any task that required writing. Given that Torres worked as an office assistant and most (if not all) of her essential tasks—filing, sorting, writing, typing, opening mail, counting money, loading paper into a copy machine, collecting books, logging information by hand or on a computer—required her to use a computer or grip or grasp items with her hands, the evidence did not require the jury to accept Torres's testimony. The evidence was neither uncontradicted nor

16

unimpeached, nor did it require a finding in favor of Torres as a matter of law.

Torres argues that the undisputed evidence established she worked in the same position and successfully performed the same essential job functions for many years and that, because her "job title and functions remained the same throughout her employment, there was no substantial evidence that she could not perform the essential functions of her job when she was removed." As discussed, however, the evidence was that Torres's ability to use her hands decreased over time and that Torres was absent from work nearly half the time due to her disability in the months leading up to her temporary medical leave. The evidence did not preclude the jury from finding no reasonable accommodation would have allowed Torres to perform her essential job functions at the time Dr. Nolasco placed her on a temporary medical leave.

Torres also argues the District improperly evaluated her ability to perform her essential job functions by using the job description for a senior office assistant—a position that she never held and that required different skills than those required of an office assistant. She emphasizes a senior office assistant, according to the District's job description, would have to use a computer 40 to 80 percent of the time, whereas her job description did not contain that requirement. As Torres points out, both Dr. Nolasco's January 25, 2019 conference note and the District's conference note from the February 7, 2019 meeting listed Torres's job title as senior office assistant. But the authors of both those notes testified they mistakenly listed her job title as senior office assistant. And both Dr. Nolasco and the District's risk management representative testified the District's online job

17

listing did have a 40 to 80 percent typing requirement for the office assistant position—a requirement Torres would be unable to meet, given her maximum typing time of 20 minutes per hour.

### 3. *The Evidence Did Not Compel a Verdict for Torres on her Retaliation Cause of Action*

"It is unlawful for an employer to 'discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.' [Citation.] This type of unlawful employment practice is known simply as 'retaliation.' [Citation.] To establish a prima facie case of retaliation under FEHA, an employee must show that (1) she engaged in a 'protected activity,' (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 636.) It is also unlawful to retaliate or otherwise discriminate against an employee for requesting an accommodation for a disability, regardless of whether the request was granted. (§ 12940, subd. (m)(2).)

Torres claimed the District retaliated against her for requesting accommodation for her disability and complaining about discrimination. The jury found Torres failed to prove that she requested a reasonable accommodation for her disability or that she complained about not being reasonably accommodated. The evidence did not compel a contrary result.

First, there was no evidence Torres ever complained the District did not reasonably accommodate her before Dr. Nolasco placed Torres on temporary medical leave on January 25, 2019—

18

the date Torres claims the District terminated her employment. Torres does not argue otherwise; instead, she cites evidence she complained the District did not reasonably accommodate her *after* Dr. Nolasco placed her on temporary medical leave. Complaints by an employee after an employer's adverse employment action cannot cause the adverse employment action. (See, e.g., *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1192-1193 [to establish a prima facie case of retaliation under FEHA, plaintiffs must show "'that (1) they engaged in activities protected by the FEHA, (2) their employers *subsequently* took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action'"], italics added.)

Second, the evidence regarding Torres's other two claims against the District also did not compel a finding in Torres's favor on her retaliation claim. Specifically, Dr. Spencer's report and testimony concerning Torres's medical condition at the time Dr. Nolasco placed her on temporary medical leave did not compel a finding Torres requested a reasonable accommodation. As discussed, the jury reasonably found, based on the medical evidence, Torres's requested accommodation was not reasonable because no accommodation would have allowed her to perform her essential job functions. (See *McCormick v. Public Employees' Retirement System* (2019) 41 Cal.App.5th 428, 440 ["'A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires.'"]; *Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 373 [same].) The evidence did not compel a contrary finding.

19

## DISPOSITION

The judgment and order are affirmed.  Torres's appeal from the trial court's order denying her motion for new trial by operation of law is dismissed.  The District is to recover its costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.