Filed 7/22/21  Mikhail v. Pasadena Unified School District CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| MICHAEL NIGUIB MIKHAIL, Plaintiff and Appellant, v. PASADENA UNIFIED SCHOOL DISTRICT, Defendant and Respondent. | B298181 (Los Angeles County Super. Ct. No. BC669576) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Anderson & Associates and Andrei V. Serpik for Plaintiff and Appellant.

Doumanian & Associates and Nancy P. Doumanian for Defendant and Respondent.

_____

Plaintiff Michael Naguib Mikhail appeals from a judgment entered after the trial court granted summary judgment in favor of defendant Pasadena Unified School District (PUSD) in this employment action alleging disability and racial discrimination, harassment, retaliation, and other causes of action. Because Mikhail has not shown a triable issue of material fact as to any of his causes of action, we affirm the summary judgment.

## BACKGROUND

### I. Mikhail's Employment With PUSD

In 2001, PUSD hired Mikhail as a Food Services Coordinator in PUSD's Food Services Department. According to Mikhail, his duties included "traveling to various schools within the district to verify that instructions were being followed, covering for people that were absent, making sure procedures were being followed, and trouble shooting for problems regarding food or other food services related issues."

On April 29, 2016, PUSD sent Mikhail a letter informing him that "due to lack of work or lack of funds," PUSD, through an action by its board, was eliminating the position of Food Services Coordinator, effective June 30, 2016. Along with the letter, PUSD enclosed a form for Mikhail to complete, indicating either his acceptance of the layoff or his election "to bump into an assignment in a different office/at a different work site, with no reduction in time, if available, based on [his] seniority." On May 9, 2016, Mikhail completed and signed the form, indicating his election of the latter option.

In the summer of 2016, after Mikhail's last day of employment with PUSD, Mikhail applied for another position within PUSD's Food Services Department, Food Services Assistant, but his application was "disqualified" for failure to

2

meet requirements, as explained in more detail below during our discussion of evidence submitted in connection with PUSD's motion for summary judgment.

On September 15, 2016, Mikhail filed a complaint against PUSD with the California Department of Fair Employment and Housing (DFEH), alleging PUSD engaged in the wrongful conduct summarized below.

## II.    Mikhail's DFEH Complaint Against PUSD

Under the Fair Employment and Housing Act (FEHA) as written in 2016, to pursue the present action, Mikhail was required to file an administrative complaint with DFEH within one year from the date on which PUSD's alleged unlawful conduct occurred.  (Former Gov. Code, § 12960, subd. (d).) Mikhail's September 15, 2016 complaint to DFEH alleges PUSD's conduct dating back to 2012.[1]

Mikhail alleged in his complaint to DFEH that in October 2012, he twisted and injured his knee during his employment with PUSD.  He requested reasonable accommodations, including a disabled parking spot, which he never received, and he complained about the nature of his assignments due to his knee injury, but PUSD failed to engage in a good faith interactive process with him.  He had knee surgery and when he returned to work, his supervisors ignored the work restrictions his doctors

_____

[1] We discuss below in the Discussion section of this opinion the exception to the one-year FEHA limitations period for filing an administrative complaint known as the "continuing violation doctrine," under which an "employer is liable for acts falling outside the limitations period when the acts are part of a continuing violation of the employee's FEHA rights."  (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 371-372 (*Nealy*).)

3

prescribed and required him to perform tasks prohibited by the restrictions.[2] "Thereafter, PUSD failed to promote him" and required him to "perform managerial duties" for which he was not compensated, despite his several complaints about the lack of compensation and additional duties.

Mikhail also alleged in his complaint to DFEH that in or about April 2013, he told his supervisor that he planned to apply for the Operations Supervisor position in PUSD's Food Services Department. His supervisor responded, " 'The District will hire a Latino person for that position.' "[3] Mikhail sent an email to management, complaining about his supervisor's comment, but PUSD "did not investigate this incident and ratified [the] conduct." Mikhail applied to be Operations Supervisor and, according to his DFEH complaint, he "was ranked Number 2 for this position."[4] PUSD hired someone from outside the district to be Operations Supervisor.[5]

---

[2] Although Mikhail did not include in his DFEH complaint the dates of his knee surgery and his return to work thereafter, his declaration in opposition to PUSD's motion for summary judgment states that he had knee surgery in December 2014 and returned to work in May 2015.

[3] Although Mikhail alleged discrimination based on national origin/race in his complaint to DFEH, he did not include any information about his national origin/race in that complaint. In his declaration in opposition to PUSD's motion for summary judgment, he stated he is "of Egyptian nationality."

[4] Evidence Mikhail submitted in opposition to the summary judgment motion showed that when he took the promotional examination for Operations Supervisor in or about spring 2012, he placed "in Rank 2 of candidates on the Promotional Eligibility List for employment consideration in this class." His eligibility

Mikhail further alleged in his complaint to DFEH that on or about August 14, 2015, during a "Non-Discrimination Seminar provided to employees of the Food Services Department," he was harassed and discriminated against because of his race when his supervisor "ridiculed" him "for his accent" in front of other employees. He did not describe his supervisor's comment in his DFEH complaint. He filed a complaint about the incident with PUSD's human resources department, but PUSD did not investigate; instead, it "ratified and condoned the unlawful conduct."

Finally, Mikhail alleged in his complaint to DFEH that on May 31, 2016 (a month after PUSD notified him in writing that his position was being eliminated effective June 30, 2016, as set forth above), he "suffered severe injuries to his left arm when delivering boxes of fruit to an elementary school within the district." After he went to the doctor due to his injuries, PUSD "failed to engage in the mandatory good-faith interactive process to determine the nature and extent of [his] injuries, and failed to provide reasonable accommodations. Instead, PUSD terminated him six (6) days after his workplace injury under the pretext that

for the Operations Supervisor classification, in Rank 2, based on the 2012 examination, was still in effect when he applied for that position in or around April 2013.

[5] In support of its summary judgment motion, PUSD presented excerpts from Mikhail's deposition at which Mikhail testified that the person hired as Operations Supervisor was a Ugandan (not Latina) woman, who had prior management experience in food services.

[it] had decided to eliminate his position."[6]  PUSD thereafter "failed to reinstate him as a Food Services Assistant, a demoted position."  Mikhail alleged PUSD's termination of his employment in spring of 2016 was not only due to his arm injuries but also in "direct retaliation to" the other "complaints and requests for accommodations" described in his DFEH complaint, dating back to his knee injury in the fall of 2012.

On September 15, 2016, the same day Mikhail filed his DFEH complaint, DFEH issued a right-to-sue notice on the complaint, explaining that "an immediate Right to Sue notice was requested."

## III.    Mikhail's Complaint Against PUSD in the Present Action

After filing a tort claim with PUSD, Mikhail filed the present action against PUSD on July 24, 2017.  The complaint also named individual defendants, who are not parties to this appeal because they were not parties to the summary judgment motion, including Mikhail's supervisors, Darren Hughes and Erin Dreyer.  Mikhail asserts 11 causes of action in his complaint in this action.

The first five causes of action in the complaint allege violations of Mikhail's FEHA rights based on disability status: harassment, discrimination, retaliation, failure to engage in the interactive process, and failure to accommodate.  These five causes of actions arise from the October 16, 2012 knee injury and the May 31, 2016 arm (shoulder) injury, and repeat the alleged

---

[6] We reiterate that PUSD notified Mikhail in writing a month before he sustained the injuries to his arm that his position was being eliminated effective June 30, 2016, due to "lack of work or lack of funds."

conduct of PUSD set forth in Mikhail's DFEH complaint, as summarized above. Mikhail added allegations, including: (1) that one of his supervisors "call[ed] into question the veracity of" his knee injury, when the supervisor indicated in an email to him that there had been too many injuries in the Food Services Department and 80 percent of them "were being investigated"; (2) that PUSD harassed, discriminated, and retaliated against him due to his knee injury by denying his request to work for the 2015 summer school session; and (3) that supervisor Hughes harassed and belittled him by responding, "really," when he informed Hughes that his left eye was burning and he needed to see a doctor on April 29, 2016. He alleges he required surgery on his left eye in August 2016.[7] He also alleges his termination in June 2016, based on his disability status, "was masked as an 'elimination of a position,'" but the reason was pretextual, as "the other Food Services Coordinator . . . was bumped into another position immediately"; and "PUSD cloaked the refusal to rehire [him as a Food Services Assistant] by alleging [he] was not eligible for the position because he lacked a bachelor's degree," which was not a requirement for the position. Mikhail asserts PUSD's "disability harassment . . . caused him stress, anxiety, and depression."

The sixth through eighth causes of action in the complaint allege violations of Mikhail's FEHA rights based on his race/national origin: harassment, discrimination, and retaliation. These three causes of action arise from the conduct of PUSD set forth in Mikhail's DFEH complaint, as summarized above: (1) that PUSD failed to hire him for the Operations Supervisor

_____

[7] There is no evidence in the record indicating the eye injury was work-related.

7

position in April 2013 "because of his Egyptian race/national origin," as a supervisor informed him, "The District will only hire a Latino person for that position";[8] (2) that supervisor Dreyer "mocked and ridiculed" him on August 15, 2015, "when she belittled and humiliated [him] for his accent and height in front of a large group of people [at a] meeting";[9] and (3) that PUSD did nothing when he complained about these incidents. He asserts his termination in June 2016, and PUSD's refusal to rehire him as a Food Services Assistant (while it rehired the other Food Services Coordinator), were based on his race/national origin and his complaints about disparate treatment, and not the pretextual reason of the elimination of the Food Services Coordinator position, as stated by PUSD. He also asserts PUSD's racial harassment, discrimination and retaliation caused him "to suffer severe emotional and mental distress."

In his ninth cause of action, Mikhail asserts PUSD violated his rights as a whistleblower under Labor Code section 1102.5. He alleges he engaged in the following protected activities: (1) in September 2011, he complained to his supervisor in an email regarding a PUSD elementary school "failing to comply with meal count procedures"; (2) on dates not disclosed, he complained to a supervisor and others in emails regarding PUSD requiring him to perform supervisory and overtime work without supervisory and overtime compensation, and he requested "a classification study of his position as Food Services Coordinator"; (3) in August 2012,

---

[8] As set forth above, Mikhail acknowledged during his deposition that PUSD hired a Ugandan (not a Latina) woman for the position of Operations Supervisor.

[9] In opposition to the summary judgment motion, Mikhail stated Dreyer commented that he was short, as described below.

8

he complained to a supervisor in an email about "contaminated water" at a district high school, which the food services staff used to prepare food; (4) in June 2013, he complained to a supervisor in an email, and to the California Department of Education (CDE) in a written complaint, that the other Food Services Coordinator was forging the signature of the director of a child care center by cutting and pasting the signature onto reports; (5) in December 2013, he complained to a supervisor in an email regarding PUSD serving spoiled chicken to students; (6) in November 2014, he challenged the interview process after he applied for Food Services Operations Supervisor in October 2014 and was not chosen for the position; (7) in October 2015, he filed a formal complaint with PUSD human resources about supervisor Dreyer mocking and ridiculing him "for his accent and height in front of a large group of people meeting for an annual discrimination course"; and (8) in or about February 2016, he complained to supervisor Hughes that PUSD was falsifying meal claims for its Supper Program because students were taking the meals and then throwing them away unopened because they disliked the food; and in April 2016, he mailed a written complaint about this issue to CDE, resulting in a public audit and report.

Mikhail asserts PUSD retaliated against him for engaging in the above-referenced protected whistleblowing activities in the following ways: (1) in 2013, his "supervisor emailed him and provided him with several additional duties, adding to his workload and setting him up for failure"; (2) PUSD denied him a disabled parking spot and ignored his work restrictions after he returned from knee surgery in spring 2015; (3) he was passed over for the Food Services Operations Supervisor position in

spring 2013, despite his rank on the examination, and PUSD hired an external candidate; (4) when he again applied for the Operations Supervisor position in fall 2014, PUSD hired Hughes and Dreyer from outside the district; (5) after PUSD eliminated his position of Food Services Coordinator, PUSD did not contact him to place him in another position, but PUSD immediately bumped the other Food Services Coordinator into another position; (6) PUSD used a pretextual reason—elimination of the Food Services Coordinator position—to terminate his employment; (7) PUSD refused to place him in the Food Services Assistant position—a position below his previous position of Food Services Coordinator—after his termination; and (8) when a Food Services Coordinator position "was brought back a few months later," PUSD failed to reinstate him or contact him to return to his position.

In his tenth cause of action, Mikhail asserts PUSD subjected him to discriminatory and retaliatory adverse employment practices, in violation of the California Family Rights Act (CFRA), Government Code section 12945.2, because he took protected leave under CFRA between December 2014 and April 2015 due to his knee injury. He alleges PUSD failed to engage in a good faith interactive process with him and failed to accommodate him, denied his request to work during summer 2015, terminated his employment in June 2016, and refused to rehire him, because he took protected leave under CFRA for his knee injury.

In his eleventh cause of action, Mikhail asserts PUSD retaliated against him, in violation of Labor Code section 923, because he exercised his right to use a union representative in July 2013 and October 2013 "in an attempt to discuss the

10

conditions of his employment and unfair discriminatory conduct by Defendant PUSD in anticipation of filing a grievance"; and, in December 2014 and March 2015, he retained an attorney to prepare and file an Unfair Practice Charge and an Amended Unfair Practice Charge against PUSD with the Public Employment Relations Board. He alleges PUSD's retaliation included denial of promotion to Operations Supervisor in fall 2014, denial of his request to work during summer 2015, his termination in June 2016, and PUSD's refusal to rehire him.

## IV. Motion for Summary Judgment

### A. PUSD's Moving papers

In its motion for summary judgment/adjudication, PUSD argued all Mikhail's causes of action fail as a matter of law because: (1) PUSD's conduct occurring before September 15, 2015—one year before Mikhail filed his DFEH complaint—is outside the limitations period for exhausting his administrative remedies, and the continuing violation doctrine does not apply to hold PUSD liable for the pre-September 15, 2015 conduct because the various incidents were not similar and frequent; (2) PUSD articulated a legitimate business reason for the elimination of Mikhail's position—budget cuts; (3) Mikhail was not disabled when PUSD notified him of the elimination on his position; (4) PUSD accommodated Mikhail's eye injury by providing the time off he requested—the only injury that occurred after September 15, 2015 and before notice of the elimination of his position; (5) the majority of the alleged whistleblower disclosures occurred outside the applicable statute of limitations for violations of Labor Code section 1102.5, and any disclosures made within the limitations period do not constitute protected activity; (6) Mikhail was never denied any requested CFRA leave; and (7) Mikhail was

11

never denied union representation, and there is no evidence he was laid off for exercising his collective bargaining rights.

In support of its motion for summary judgment/adjudication, PUSD submitted a declaration from Food Services Operations Supervisor Darren Hughes, one of Mikhail's direct supervisors. Hughes stated in his declaration that due to the hiring of two Food Services Operations Supervisors in 2015 (him and Dreyer) and budget cuts, PUSD decided to eliminate the Food Services Coordinator positions in 2016. According to Hughes, Mikhail had 17 years of employment with PUSD, and the other Coordinator had 20 years. At the same time the Coordinators were laid off, a program technician and three cooks in the Food Services Department were also laid off. Hughes stated he verbally notified Mikhail and the other Coordinator about the elimination of their positions on March 28, 2016.[10] Thereafter, PUSD sent Mikhail a formal, written notice on April 29, 2016, informing him that the Food Services Coordinator position would be eliminated effective June 30, 2016, "due to lack of work or lack of funds," as discussed above. Hughes attached to his declaration the April 29, 2016 notice and Mikhail's May 9, 2016 written election to be bumped into another assignment, if available, based on his seniority.

Hughes also attached to his declaration text messages he and Mikhail exchanged on April 29, 2016, regarding Mikhail's eye injury. At around 6:00 a.m. on that date, Mikhail texted Hughes, stating his left eye was burning; he was planning to go to the doctor to get it checked; he hoped to be done by 10:00 a.m.;

---

[10] In his declaration in opposition to the summary judgment motion, Mikhail stated he did not recall this verbal notification regarding the elimination of his position.

12

and if so, he would go to work. Hughes replied, "Really?" Mikhail responded that "it happen[ed] two weeks ago," and he was "afraid it [was a] cataract." Later, Mikhail texted Hughes again, stating that the doctor would see him by 1:30 p.m., he would update Hughes after the appointment, and bring him a doctor's note. Hughes replied: "No update needed. Just feel better and return to work when you [the rest of the text message is cut off]." Hughes stated in his declaration that he told Mikhail in the text message to return to work when he felt better. He never "took issue" with or denied Mikhail's request for time off.

According to Hughes's declaration, on May 30, 2016, another employee notified him that Mikhail injured his left shoulder. Mikhail took time off from work to see a doctor. Hughes never took issue with or denied Mikhail's request for time off due to the shoulder injury. On June 1, 2016, Hughes texted Mikhail to let him know that he had received the work keys Mikhail had turned in to PUSD and to request that Mikhail turn in his work phone by June 2, 2016. On June 2, 2016, Mikhail texted Hughes to let him know that the doctor said Mikhail could return to work with the restriction that he not use his left arm. Mikhail asked Hughes in the text message if Hughes wanted him to come to work. Hughes responded: "Negative. Please drop it [the work phone] off at Ed Center when you are physically able to. Thank you." Hughes attached these text messages to his declaration and explained in the declaration: "Given that the school year had finished and he had already turned in his keys, I told him [Mikhail] it was not necessary and he could turn in his work phone when he was physically able to do so as his last day of work was June 30, 2016."

13

Hughes also stated in his declaration that Mikhail, the other Food Services Coordinator, and the other Food Services Department employees who were laid off were placed on a 39-month rehire list pursuant to their collective bargaining agreement. In or about August 2016, with the expansion of the Childhood Adult Care Food Program from seven schools to 20 schools, enough revenue was generated to pay for an additional Food Services Assistant position. Pursuant to the collective bargaining agreement, the other Food Services Coordinator, whose position was eliminated at the same time as Mikhail's, was selected to fill the Food Services Assistant position because she had more seniority with PUSD than Mikhail (20 years vs. 17 years), and she had previously worked as a Food Services Assistant for 10 years. According to Hughes, "Mikhail had never held the position of Food Services Assistant."

Hughes further stated in his declaration: "In late 2016, [PUSD] had an opening for a Food Services Manager II position. Mr. Mikhail was not only notified of the position, but he was selected as the most qualified candidate and offered the job on or about October/November 2016. Mr. Mikhail did not take the position because he had a pending workers' compensation matter and acceptance of the position required a full physical examination."[11]

PUSD submitted other exhibits in support of its motion for summary judgment/adjudication, including: (1) the April 21, 2015 notice of dismissal by the Public Employment Relations Board of the Unfair Practice Charge and Amended Unfair

_____

[11] Mikhail did not reference his application for the Food Services Manager II position in his complaint in the present action.

14

Practice Charge Mikhail referenced in his complaint in this action, because Mikhail failed to state a prima facie case;[12] (2) Mikhail's May 31, 2016 report of occupational injury, instituting a workers' compensation claim regarding his shoulder injury; and (3) the portion of Mikhail's collective bargaining agreement, stating in pertinent part, "Layoff shall occur for lack of work or lack of funds."

### B.    Mikhail's opposition

In support of his opposition to PUSD's motion for summary judgment/adjudication, Mikhail submitted his own declaration. Therein, he included additional information and details that were not set forth in his DFEH complaint or in his complaint in this action.[13]  He stated that when he requested summer work assignments in 2003, 2006, 2007, 2009, 2012, 2013, and 2014, PUSD approved the assignments.  Prior to his knee injury, the only time he was a denied a summer work assignment was in 2002.  That year, the denial letter stated that his name would be placed on the substitute list for a summer work assignment.  On May 14, 2015, a few days before he returned to work after his knee surgery, he received a letter stating he was denied a summer work assignment for 2015 "[b]ecause of the large number of applications for Summer School work and because of the limited number of positions budgeted."  Unlike the denial letter

_____

[12] In the charge, Mikhail alleged that, because he belonged to a union, PUSD discriminated against him and failed to take any action regarding his grievance that he was working outside his classification.

[13] We do not set forth here the statements in Mikhail's declaration that are duplicative of the allegations in his complaint in this action, as summarized above.

15

in 2002, this letter did not state he would be placed on the substitute list for a summer work assignment. Shortly after his April 29, 2016 eye injury, he applied for a summer work assignment for 2016. He received a denial letter with the same language as that in the 2015 denial letter (again not stating he would be placed on the substitute list for a summer work assignment).[14] Mikhail attached to his declaration the acceptance and denial letters for summer work assignments.

In his declaration, Mikhail described supervisor Dreyer's August 14, 2015 comment at the discrimination training when she "mocked and ridiculed [him] due to [his] race and ethnicity": "During that meeting, Erin Dreyer requested that people list traits or characteristics that were protected and subject to discrimination laws. I raised [my] hand and stated 'accents,' as I had been previously taunted by certain employees regarding my accent. In response, Erin Dreyer said, 'and you're short too,' referring to my 5'0" height, causing the remainder of the employees to laugh at me." He received "a notice that [his] position was being eliminated, and that [he] was being laid off, less than six months" after he filed a written complaint with human resources regarding Dreyer's comment.

Mikhail further indicated in his declaration that after he complained to the interim director of the Food Services Department in December 2013 regarding spoiled chicken being served in a PUSD school cafeteria, the same interim director interviewed him in or about October 2014 for the Food Services Operations Supervisor position and "determined that [he] had

---

[14] In his opposition to the summary judgment motion, Mikhail indicates PUSD denied him a summer work assignment in 2016 because of the knee injury rather than the eye injury.

completely failed [his] oral interview and was not qualified for the job." However, when he had interviewed for the same position two and a half years earlier, he passed the examination in Rank 2.

Mikhail attached to his declaration documents indicating he had worked as a Food Services Assistant during summer assignments in 2006 and 2007. He also attached to his declaration the August 26, 2016 email informing him that his post-layoff application for Food Services Assistant "was disqualified, as it did not clearly reflect that [he] met one or more of the following requirements: "Experience required for the position"; "Education required for the position"; "Special License required for the position"; "Missing required attachments"; and "Other (e.g. incomplete application)." The email informed Mikhail he could appeal the disqualification to the Director of the Personnel Commission within seven days. Regarding the disqualification, Mikhail stated in his declaration: "When I inquired further, I was informed that my application was denied because I had not submitted a valid high school diploma, even though I had in fact submitted a translated version of my Egyptian High School Diploma, which was equivalent to an American high school diploma. This same Egyptian High School Diploma had previously been accepted when I was hired for the Coordinator position in 2001, and again when I qualified (but was not selected) for the Supervisor position in 2012."[15] Mikhail did not state in his declaration that he submitted an appeal of his

---

[15] In his complaint in this action, Mikhail asserted he was denied the Food Services Assistant position because he did not have a bachelor's degree (not a high school diploma).

17

disqualification, and there is no evidence in the record indicating that he did.

Responding to statements in supervisor Hughes's declaration in support of PUSD's motion for summary judgment that PUSD offered Mikhail the position of Food Services Manager II in fall 2016—a position Mikhail did not mention in his complaint in this action—Mikhail stated in his declaration: "I was never offered the position and never received a follow up. Had I been offered the position, I would have happily accepted it." Mikhail attached to his declaration documents demonstrating he applied for the Food Services Manager II position in August 2016, after his layoff, and was invited to participate in the oral examination for the position in October 2016. He maintains he received no response from PUSD after the oral examination.

With his opposition to the summary judgment motion, Mikhail submitted PUSD documents indicating that the five other Food Services Department employees who were laid off with him—the other Food Services Coordinator, the program technician, and the three cooks—all found other work assignments at PUSD. On November 1, 2016, a PUSD employee texted Mikhail, informing him that on that date, the other Food Services Coordinator whose position was eliminated along with Mikhail's was reinstated as Food Services Coordinator (after serving as Food Services Assistant since the Coordinator positions were eliminated). Mikhail attached the text messages to his declaration.

In his opposition to PUSD's motion for summary judgment/adjudication, Mikhail argued, among other things: (1) the continuing violation doctrine applies to PUSD's conduct outside the one-year limitations period for filing a complaint with

18

DFEH (pre-September 15, 2016 conduct) because the evidence shows "continuous instances of discrimination, harassment, and retaliation, both before and after September 15, 2015" that were "similar in kind and occurred with sufficient frequency to constitute a continuous and temporally related course of conduct"; (2) PUSD's stated reason for laying off Mikhail—budget cuts—was pretextual because all other Food Service Department personnel who were laid off with Mikhail were bumped into other positions within PUSD, but he was not rehired due to disability and racial discrimination and as retaliation for his protected whistleblower disclosures, his exercise of his right to CFRA leave, and his use of union representatives; and (3) the whistleblower disclosures he made within the statute of limitations period constitute protected activity because he believed he was reporting violations of law. Mikhail also stated, "[t]o the extent the court finds that certain allegations are not adequately pled in the complaint, [he] seeks leave to file a first amended complaint."[16]

### C. Trial court's ruling and judgment

There was no court reporter at the hearing on PUSD's motion for summary judgment/adjudication. Mikhail requested and the trial court issued a settled statement, providing: "1. The Court found that all of Plaintiff's claims were barred by the statute of limitations and the continuing violation doctrine did not apply because no wrongful conduct occurred within one year of September 15, 2016, when Plaintiff filed his DFEH charges; [and] 2. As to the denial of Plaintiff's application for the Food Services Assistant Position on August 26, 2016 and Manager II

---

[16] Mikhail and PUSD filed evidentiary objections. The trial court did not rule on the objections, and the parties do not address the objections on appeal.

19

position on or about November 1, 2016, the Court found that Plaintiff had not presented evidence that Plaintiff was in a protected class (disabled) during that time period."[17]

On April 3, 2019, the trial court issued an order granting PUSD's motion for summary judgment, finding no triable issues of material fact as to any of Mikhail's causes of action, and concluding PUSD is entitled to judgment as a matter of law. The same day, the trial court entered judgment in favor of PUSD and against Mikhail.

## DISCUSSION

## I. Standard of Review

A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To prevail on a motion for summary judgment in an action brought under FEHA, Government Code section 12900 et seq., a defendant employer initially has the burden to show "either that (1) plaintiff could not establish one of the elements of the FEHA claim, or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment [or take some other adverse employment action]." (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247.) The trial court must "decide if the plaintiff has met his or her burden of

---

[17] Notwithstanding our de novo standard of review, we set forth the trial court's reasons for granting the summary judgment motion because Mikhail argues on appeal that the trial court improperly granted summary judgment on an issue not raised in the motion—his disability status at the time PUSD declined to rehire him—without giving him an opportunity to respond.

establishing a prima facie case of unlawful discrimination. If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203; see *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

On appeal, we independently make the same determination. " 'In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [his] evidence while strictly scrutinizing defendants.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.) "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.)[18]

In his complaint in the present action, Mikhail alleges PUSD terminated his employment and failed to rehire him as a Food Services Assistant because he was disabled, because of his

_____

[18] As set forth above, the trial court did not rule on the parties' evidentiary objections, and the parties do not address the evidentiary objections on appeal.

21

race/national origin, and as retaliation for his whistleblower disclosures, his exercise of his right to take CFRA leave, and his engagement of a union representative and an attorney to complain about PUSD's conduct.

We conclude PUSD satisfied its burden on summary judgment of showing Mikhail cannot prevail on any of his causes of action because he was laid off when his position was eliminated due to budget cuts; he was not rehired as a Food Services Assistant because he had less seniority than the person who was hired for that position, and he did not demonstrate he satisfied the requirements for the position; and other conduct he alleged fell outside the limitations period for his administrative complaint to DFEH.

"[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 361.) " 'The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) A showing of "general unfairness" by the employer will not defeat the employer's summary judgment motion. (*Ibid.*) The employee must show discrimination. "An employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' " (*Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 456.)

For the reasons explained below, we conclude Mikhail has not shown a triable issue of material fact as to any of his causes of action, and PUSD is entitled to summary judgment as a matter of law.

## II. The Causes of Action Based on Mikhail's Disability Status—the First Through Fifth Causes of Action

### A. Knee injury

Mikhail's allegations regarding PUSD's wrongful conduct in response to his knee injury fall outside the limitations period for his DFEH complaint. He filed the DFEH complaint on September 15, 2016, so any conduct before September 15, 2015 is outside the limitations period. (Former Gov. Code, § 12960, subd. (d).) He injured his knee in October 2012, had his knee surgery in December 2014, and returned to work in April or May 2015. He presented no evidence indicating he had any lingering workplace issues associated with his knee injury on or after September 15, 2015.

The continuing violation doctrine does not apply here. An "employer's acts constitute a continuing violation when they '(1) [are] sufficiently similar in kind—recognizing . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence.' [Citation.] ' "[P]ermanence" in the context of an ongoing process of accommodation of disability, or ongoing disability harassment, should properly be understood to mean the following: that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain a reasonable accommodation or end

23

harassment will be futile.' " (*Nealy, supra*, 234 Cal.App.4th at p. 372.)

Mikhail presented no evidence indicating he was still seeking or needed accommodations for his knee injury on or after September 15, 2015.  Moreover, he does not allege, nor has he presented evidence, that PUSD's conduct after his eye and shoulder injuries was similar to that after his knee injury.  After the eye and shoulder injuries, PUSD did not deny any requested accommodations or require Mikhail to perform tasks inconsistent with his limitations.

**B.    Eye injury**

On April 29, 2016, after PUSD had made the decision to eliminate Mikhail's position, Mikhail informed supervisor Hughes that he needed to go to the doctor for a burning sensation in his eye that he believed was caused by a cataract.  Hughes allowed him to take the day off.  There is no evidence indicating Mikhail further discussed the eye issue with, or requested any other accommodation from, any supervisor at PUSD.  That Hughes may have expressed skepticism—if that is indeed what it was—when Mikhail first texted him about the eye issue (responding, "Really?"), does not show a triable issue of material fact that PUSD took any adverse employment action against Mikhail because he missed one day of work (with permission) due to the eye issue.  Mikhail has not demonstrated a connection between the eye injury and any adverse employment action (including the denial of a summer assignment position for 2016).

**C.    Shoulder injury**

Mikhail injured his shoulder at work on or about May 31, 2016, a month after PUSD sent him written notice that his position was being eliminated.  When Mikhail notified supervisor

24

Hughes on June 2, 2016 that he could return to work, but he could not use his left arm, the school year was already over, Mikhail had already turned in his work keys, he had not been hired to work a summer assignment (before his shoulder injury), and the elimination of his position was effective June 30, 2016. Given these factors, Hughes's decision not to have Mikhail return to work does not show discriminatory or retaliatory intent.[19]

Similarly, there is no evidence indicating PUSD refused to rehire Mikhail as a Food Services Assistant because he had a shoulder injury. As set forth in Hughes's declaration in support of PUSD's summary judgment motion, the other Food Services Coordinator whose position was eliminated at the same time as Mikhail's had seniority over Mikhail and had previously worked as a Food Services Assistant for 10 years. Mikhail had worked at PUSD fewer years than the other Coordinator and had only worked as a Food Services Assistant during two, brief summer assignments. Moreover, the evidence shows Mikhail's application for Food Services Assistant was disqualified for failure to show he met the requirements, and there is no evidence indicating Mikhail appealed the disqualification or corrected the deficiencies.

Mikhail did not reference his post-layoff application for Food Services Manager II in his complaint in the present action. PUSD raised the issue in its motion for summary judgment and stated (in Hughes's declaration) it had offered Mikhail the Manager II position, in support of its argument it had not discriminated or retaliated against Mikhail due to his shoulder injury. Mikhail presented evidence demonstrating he applied for

---

[19] Mikhail does not allege he did not receive his pay between May 31 and June 30, 2016.

the Manager II position, and he was selected for the oral examination for the position.  He maintains, however, that he never heard back from PUSD after the oral examination.  He presented no evidence indicating he contacted PUSD to inquire further about the position.  Even assuming PUSD rejected him for the position, there is no evidence connecting such rejection with his shoulder injury.  For example, there is no evidence of any discussion between himself and PUSD regarding any job performance limitations or accommodations he might have needed in the Manager II position due to his shoulder injury.[20]

For the foregoing reasons, Mikhail has not shown a triable issue of material fact that PUSD took any adverse employment action against him because he had a disability.

## III. The Causes of Action Based on Mikhail's Race/National Origin—the Sixth Through Eighth Causes of Action

Mikhail agues supervisor Dreyer's comment about him at the August 14, 2015 discrimination training is within the limitations period for his DFEH complaint (conduct occurring on or after September 15, 2015) because the period was tolled while he pursued his internal complaint with PUSD, which he filed on October 22, 2015.  Assuming Mikhail is correct, without reaching

---

[20] We need not address Mikhail's contention the trial court erred in deciding the summary judgment motion on an issue not raised in PUSD's motion—that Mikhail was not disabled at the time PUSD declined to rehire him after the layoff.  We assume for purposes of our analysis that Mikhail was disabled at that time due to his shoulder injury.  But we conclude Mikhail has not raised a triable issue of material fact showing a connection between Mikhail's disability and PUSD's decision not to rehire him.

the issue, his sixth through eighth causes of action fail as a matter of law because there is no evidence PUSD took any adverse employment action against him because of his race/national origin.

Mikhail asserts that when Dreyer asked the group to list traits or characteristics that are protected and subject to discrimination laws, he [Mikhail] listed "accents" as such a trait or characteristic. According to Mikhail, Dreyer responded, " 'and you're short too.' " The other employees laughed at Mikhail. Based on Mikhail's account, Dreyer did not reference Mikhail's accent; she referenced his height, which is not a protected category. Even assuming Dreyer referenced Mikhail's accent (in addition to his being short), there is no evidence indicating a connection between this one comment and any adverse employment action based on race/national origin.

Mikhail references one other comment about race/national origin, made by a different supervisor (not Dreyer or Hughes) in April 2013, outside the limitations period for Mikhail's DFEH complaint. According to Mikhail, he expressed interest in applying for the Food Services Operations Supervisor position, and his supervisor responded, PUSD "will only hire a Latino person for that position." We will not apply the continuing violation doctrine as an exception to the limitations period where these two unrelated comments, one in April 2013, and one in August 2015, are the only allegations that relate in any way to race/national origin. As set forth above, this doctrine applies to similar and reasonably frequent conduct. (*Nealy, supra*, 234 Cal.App.4th at p. 372.) In any event, the evidence does not show Mikhail was not selected for the Operations Supervisor position because he is not Latino, as he indicates in his declaration.

27

PUSD selected a Ugandan (not a Latina) woman with prior management experience for the position.

Mikhail has not shown a triable issue of material fact that PUSD took any adverse employment action against him because of his race/national origin.

## IV.    Ninth Cause of Action for Whistleblower Violations

"Labor Code section 1102.5, subdivision (b), prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a statutory or regulatory violation.  The purpose of this statute is to ' "encourag[e] workplace whistle-blowers to report unlawful acts without fearing retaliation." ' " (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1545-1546.)  "To establish a prima facie case for whistleblower liability, a plaintiff must show that he or she was subjected to adverse employment action after engaging in protected activity and that there was a causal connection between the two."  (*Id.* at p. 1546.)

On appeal, Mikhail only advances two of the numerous alleged disclosures he referenced in his complaint as being actionable under Labor Code section 1102.5:  (1) his October 22, 2015 written complaint about Dreyer's August 14, 2015 comment at the discrimination training; and (2) his April 2016 written disclosure to CDE insinuating that PUSD was falsifying meal claims for its Supper Program because students were taking the meals and then throwing them away unopened because they disliked the food.

Mikhail has presented no evidence tending to show a causal connection between either of these two disclosures and

any adverse employment action. His opposition papers and declaration are replete with bald assertions that PUSD took adverse employment actions against him because he made various disclosures of an unrelated nature (and also because he had a disability, and because of his race/national origin, and because he took CFRA leave, and because he engaged a union representative to complain about PUSD's conduct), but no evidence supporting these assertions. Mikhail has not shown a triable issue of material fact on his cause of action for whistleblower violations.

## V.       Other Causes of Action

On appeal, Mikhail does not argue he has shown a triable issue of material fact as to his tenth cause of action for CFRA violations or his eleventh cause of action for violations of Labor Code section 923. There is no evidence tending to show PUSD took any adverse employment action against Mikhail because he took CFRA leave or engaged a union representative or attorney to complain about PUSD's conduct. Mikhail has abandoned any contention on appeal that he has shown a triable issue of material fact on his tenth or eleventh causes of action.

For the reasons set forth above, Mikhail has not shown a triable issue of material fact as to any of his causes of action, and PUSD was entitled to judgment as a matter of law.

29

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED

                                                CHANEY, J.

We concur:



        ROTHSCHILD, P. J.



        CRANDALL, J.*

---

        * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.