Filed 5/15/23  Montgomery v. L.A. Unified School Dist. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

|  |  |
|---|---|
| TYRA MONTGOMERY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>Defendant and Respondent. | B316697<br><br>Los Angeles County Super. Ct. No. 20STCV03558 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Affirmed.

Kyle Todd and Alfredo Nava for Plaintiff and Appellant.

Artiano Shinoff and Paul V. Carelli, IV, for Defendant and Respondent.

## INTRODUCTION

Tyra Montgomery is employed by Los Angeles Unified School District (LAUSD) as a special education assistant in an elementary school classroom. In September 2019, school administrators did not assign her to work additional hours as an aide on the bus transporting students with special needs to and from school, as her medical restrictions precluded her from lifting more than 40 pounds. Consequently, she sued LAUSD under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for disability discrimination, failure to accommodate, and failure to engage in the interactive process.

LAUSD moved for summary judgment or, in the alternative, summary adjudication. It argued Montgomery's claims fail as a matter of law, because: (1) she cannot lift more than 40 pounds, and therefore cannot perform the essential functions of the desired bus aide role; and (2) no reasonable accommodation was available to enable her to perform those functions. The trial court granted LAUSD's motion. We affirm.

## BACKGROUND

In December 2017, Montgomery injured her neck, back, and shoulders at work while intervening in an incident involving a student exhibiting aggressive behavior. She filed a workers' compensation claim and went on medical leave from December 2017 to August 2019. Her doctor authorized her return to work with the following restrictions in place: (1) no lifting objects over 40 pounds; (2) no standing or walking for longer than one hour without at least ten minutes of sitting; and (3) no repetitive squatting, crouching, crawling, or kneeling.

In September 2019, the school principal, Lashon Sanford, received complaints from the drivers of the school bus transporting students with special needs. They informed her that the students were engaging in disruptive and dangerous behavior on the bus, including getting out of their harnesses, crawling around on the floor of the bus, and fighting with one another. Due to student behavior, the bus had to return to the school on at least two occasions, and some drivers refused to drive the bus route.

Based on the bus drivers' complaints, Principal Sanford determined that a special education assistant needed to supervise the students on the bus. The special education assistant on the bus aide assignment would work an additional 10 hours per week. School administrators assigned the role to Ericka Johnson, a special education assistant who supports one of the bus's students in the classroom. She worked the bus aide assignment until another special education assistant, Danette Matthews, transferred to the school and took over in March 2020.

A few days after Johnson began riding the bus, Montgomery spoke to the school administrative assistant, Crystal Morrison, and expressed interest in working the bus aide assignment on a bi-weekly rotation with Johnson. That day, Morrison relayed Montgomery's interest to Assistant Principal Brenda Martinez. In late September 2019, Assistant Principal Martinez e-mailed several individuals, including Special Education Resource Coordinators Renata Medina and Yolanda Lopez, for guidance on whether Montgomery should be placed in the bus aide rotation, given her medical restrictions. At some point, Assistant Principal Martinez spoke to Medina and Lopez by phone, and consulted with Principal Sanford in person,

regarding her concern whether Montgomery could safely perform the bus aide's required functions with her medical restrictions.

On October 1, 2019, Montgomery e-mailed Principal Sanford and Assistant Principal Martinez "to express [her] concerns about being overlooked for the bus support position[ ]" and to "formal[ly] inquir[e] as to why [she was] being passed over." The next day, Assistant Principal Martinez spoke to Montgomery about her interest in and ability to work the bus aide assignment consistent with her medical restrictions.[1] Following their conversation, Assistant Principal Martinez sent Montgomery an e-mail asking her to "provide . . . a clearance from [her] doctor that is specific to the activities [she] would be doing on the bus." Montgomery ultimately did not provide the school administrators with the information requested.

On October 22, 2019, Assistant Principal Martinez e-mailed the school's special education assistants "to inform [them] that there is availability to ride the school bus and support [the] students." She then asked them to e-mail her if they were interested in working the assignment. The next day, Montgomery replied to the e-mail and reiterated her interest in the assignment. Assistant Principal Martinez did not respond to her reply, and did not remember whether she followed up with Montgomery about the assignment.

On October 25, 2019, Montgomery met with Principal Sanford two times. The first meeting occurred at around 10:00 a.m. and did not relate to the bus aide assignment. The second meeting took place at around 2:00 p.m. Montgomery's declaration reflects that, at this meeting, Principal Sanford "told

---

1      The parties dispute whether Principal Sanford attended the meeting, as well as the details of what happened.

4

[Montgomery] her concern with having [Montgomery] work the bus aid[e] hours was that [Montgomery] would . . . be required to fully lift the students and put them back in their seats if they got up while the bus was in motion." According to Montgomery, Principal Sanford "said if [Montgomery] got [her] forty-pound lifting restriction removed, then she would put [Montgomery] on the bus."

In mid-December 2019, Montgomery and her union representative met with Principal Sanford at the request of RehabWest, the company assisting LAUSD employees in returning to work after receiving workers' compensation. During the meeting, the parties addressed Montgomery's ability to perform her classroom duties with her medical restrictions and her current accommodations. They did not discuss the bus aide assignment.

In late January 2020, Montgomery sued LAUSD under FEHA. As noted above, her complaint asserted claims for disability discrimination (first cause of action), failure to accommodate (second cause of action), and failure to engage in the interactive process (third cause of action).

In April 2021, LAUSD moved for summary judgment or, in the alternative, summary adjudication. It argued Montgomery's claims fail as a matter of law because, among other things: (1) "[Montgomery] cannot perform the essential functions of the [b]us [a]ide hours with or without accommodations[ ]"; and (2) "there were no reasonable accommodations that, if implemented, would support [her] to fully perform the essential functions . . . ."

At the conclusion of the hearing on LAUSD's motion, the trial court took the matter under submission. A couple weeks later, it entered a written order granting the motion. In support

of its ruling, the trial court first determined LAUSD showed there is no triable issue of material fact with respect to Montgomery's inability to perform the essential duties of the desired bus aide role. It then concluded Montgomery "failed to meet her burden in showing there is a triable issue of material fact as it relates to her ability to perform the bus aide position." The court further held she "has not met her burden[ ]" because she "has not shown that a reasonable accommodation existed that would allow her to maintain her medical restrictions while also ensuring the safety of the students and the driver on board the bus."

Accordingly, the trial court entered judgment in favor of LAUSD. Montgomery timely appealed.

## DISCUSSION

### I. Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id*., subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the

6

party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

## II.   Analysis

### A.   Disability Discrimination

"A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378 (*Nealy*).) To establish the second element of a prima facie case, the employee must show he or she "is able to perform the essential functions of his or her job, with or without reasonable accommodation." (*Ibid*.)

For purposes of FEHA, "'[e]ssential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. 'Essential functions' does not include the marginal functions of the position." (Gov. Code, § 12926, subd. (f).) "'Marginal functions' of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." (Cal Code. Regs., tit. 2, § 11065, subd. (e)(3).) "A job function may be considered essential for any of several reasons, including, but not

7

limited to, any one or more of the following: [¶] (A) The function may be essential because the reason the position exists is to perform that function. [¶] (B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed. [¶] (C) The function may be highly specialized, so that the incumbent in the position is hired based on expertise or the ability to perform a particular function." (Gov. Code, § 12926, subd. (f)(1).)

"The identification of essential job functions is a 'highly fact-specific inquiry.'" (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.) "Evidence of whether a particular function is essential includes, but is not limited to, the following: [¶] (A) The employer's judgment as to which functions are essential. [¶] (B) Written job descriptions prepared before advertising or interviewing applicants for the job. [¶] (C) The amount of time spent on the job performing the function. [¶] (D) The consequences of not requiring the incumbent to perform the function. [¶] (E) The terms of a collective bargaining agreement. [¶] (F) The work experiences of past incumbents on the job. [¶] (G) The current work experience of incumbents in similar jobs." (Gov. Code, § 12926, subd. (f)(2).)

Montgomery contends the trial court erred by concluding her disability discrimination claim fails as a matter of law because "there were disputable issues of fact . . . as to whether [she] could perform the essential functions of the [desired] position." (Capitalization and underlining omitted.) In so doing, Montgomery does not dispute that she cannot lift more than forty pounds. Instead, she asserts that based on the evidence in the record, a trier of fact could reasonably conclude performance of

8

the bus aide's essential functions does not require lifting more than 40 pounds.

We begin our analysis by evaluating whether LAUSD has shown Montgomery cannot prove her ability to perform the essential functions of the bus aide role. On this point, LAUSD submitted the deposition testimony of Special Education Resource Coordinator Renata Medina, who was designated as LAUSD's person most qualified to speak to "[t]he facts and circumstances related to any and all job descriptions of the bus aide position" and "the essential job elements of the bus aide position."[2] Medina testified the class description for the special education assistant position sets forth the position's requirements, duties, and responsibilities. According to Medina, a special education assistant working as a bus aide must be able to perform the class description's required duties to meet the needs of the students riding the bus to which he or she has been assigned. Those needs included the students' "health needs" and

_____

[2] LAUSD initially did not rely on Medina's deposition testimony in support of its motion for summary judgment. Instead, it submitted the entire transcript of her deposition with its reply brief. At no point in the trial court proceedings or in her appellate briefs has Montgomery objected to LAUSD's inclusion of new evidence with its reply brief. In addition, the record reflects Montgomery was aware of the transcript, as she submitted an excerpt of it in support of her opposition to LAUSD's motion. Under these circumstances, we conclude "it is permissible for . . . this court to consider the additional evidence." (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362 fn. 8; see also *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1426 ["Absent any objection to the inclusion of new evidence in [the movant's] reply brief, the [trial] court was entitled to consider the evidence as within the record before it"].)

their "behavioral support[ ] needs[.]" Consequently, she testified, the physical requirements a special education assistant must satisfy to work as a bus aide will depend on the needs of the students on the bus attached to the assignment.

The class description for the special education assistant position defines the role as follows: "A Special Education Assistant assists teachers by caring for the physical needs of students with disabilities and helping in their training and education through the presentation of educational materials or exercises." A special education assistant's typical duties include, among others: (1) "[l]ift[ing] students in and out of holding or locomotive devices and on and off buses when trained by appropriate staff[ ]"; and (2) "[a]ssist[ing] bus drivers in maintaining discipline and responding to the physical needs of students." The class description also has a "Special Physical Requirement[ ]" (underlining omitted) of "[s]ufficient strength to safely lift and carry objects or assist in lifting students of varying weights."

In addition to setting forth the duties and requirements above, the class description states: "This class description is not a complete statement of essential functions, responsibilities, or requirements. Requirements are representative of the minimum level of knowledge, skill, and/or abilities. Management retains the discretion to add or change typical duties of the position at any time." In her deposition, Medina testified this provision allows school administrators to unilaterally add more duties beyond those listed in the class description.

In her declaration offered in support of LAUSD's motion for summary judgment, Principal Sanford stated she determined "[t]he school needed a [s]pecial [e]ducation [a]ssistant to ride on

the bus that transported special needs students because the students were being disruptive and some of their behavior on the bus posed a danger to themselves." Principal Sanford related that the bus drivers "informed [her] that the students were getting out of their harnesses, crawling around on the floor of the bus, getting into fights with each other[, and engaging in] other disruptive behavior." She also stated the students on the bus each "have [an] IEP ('Individualized Education Program')[,]" a document that lists the student's weight and reflected "each student was well over 40 pounds."

In her declaration in support of LAUSD's motion, Medina stated that, in light of the students' behavioral issues, "the bus aide . . . for this particular bus would be required to monitor the students on the bus, direct students to stay seated and keep their hands to themselves, and be able to physically assist students who may unharness themselves, verbally and physically be able to redirect students who begin crawling around the moving bus, [and] stop students (verbally and physically) from putting any part of their bodies outside the windows – among other duties." According to Medina, "[t]he [b]us [a]ide [assignment] would be physically demanding because of the needs of the[ ] particular students [riding the bus] and because . . . these duties are performed on a moving bus." She also opined that "[w]hile the bus driver may be able to help with loading and unloading students, the bus driver would not be able to physically assist[ ] the [b]u[s] [a]ide while driving." Therefore, "for the safety of the students on board the bus, the [b]us [a]ide needs to be able to immediately physically respond to the student safety situations that had originally led to the need for a [b]us [a]ide on the bus." Based on her experience, she believed "Montgomery would likely

11

face supervision situations on the bus that [would] require[ ] her to push, pull, and/or lift more than 40 pounds[.]"

At her deposition, Medina testified that the students on the bus at issue "require[d] staff to maintain the students in their seats and seatbelts, to assist students getting back to their seats, to prevent students from disrobing or climbing out of windows of the bus, and prevent students from being physically abusive to each other or themselves." To meet these needs, she testified, the bus aide may need to "[r]eturn[ ] students to their seats [after they had been] crawl[ing] under their seats[,]" which "would require lifting." In so doing, the bus aide would have to "support[ ] more than 40 pounds[,]" as the students on the bus were between preschool and fifth grade.

Medina also identified several other situations where a bus aide would need to lift a student. She testified a student may need to be lifted if he or she "has any kind of seizure disorders and must be administered emergency medication." She also testified that "[i]f . . . student[s] . . . [have] behavior issues where they . . . get out of their seats or crawl under seats, [the bus aide] may have to lift the student[s] back up into the seat and resecure them." Medina further opined that "[i]f [a] student requires [the bus aide] to remove [him or her] from a seat to perform any kind of first aid or CPR on the student, it will require . . . lifting . . . ." Finally, she opined the bus aide would be required to lift a student to "[a]ssist[ ] the driver with loading and unloading the bus[ ]" and in "[a]n emergency evacuation of the bus."

The evidence discussed above establishes that an essential function of a special education assistant working as a bus aide is to lift students as required to meet their various needs. While on the bus, the bus aide must be able to perform that function to

12

quickly and safely address behavioral needs, and/or ensure student safety, including safety during emergencies. Each of the students on the bus weighed more than forty pounds. Montgomery, however, cannot lift more than forty pounds, and therefore cannot perform the lifting function necessary to meet student needs. On this record, we conclude LAUSD has carried its burden of showing Montgomery cannot satisfy the second element of a prima face case for disability discrimination, as she cannot perform an essential function of the bus aide assignment consistent with her medical restrictions. The burden therefore shifted to Montgomery to show a triable issue of material fact exists. (Code Civ. Proc., § 437c subd. (p)(2).)

Montgomery contends the record contains sufficient evidence to defeat summary judgment. In support of her position, she appears to raise four arguments. We address each in turn.

First, Montgomery asserts that a document in the record, titled "Functional Job Analysis[,]" sets forth the essential functions to be performed by a special education assistant, and "states lifting over 40 pounds would not be required of the position." Accordingly, she contends this document demonstrates there is a triable issue of fact with respect to whether she can perform the essential functions of the bus aide assignment.

We reject Montgomery's contention. In so doing, we acknowledge the Functional Job Analysis states that a special education assistant's "[e]ssential [f]unctions" include "[l]ift[ing] students in and out of holding devices" and "[a]ssist[ing] teachers and bus drivers in maintaining discipline of students[.]" Based on the Functional Job Analysis, performance of those functions only requires the special education assistant to lift objects weighing "0 – 40 pounds." As discussed below, however, LAUSD's

13

uncontroverted evidence shows the Functional Job Analysis does not accurately or comprehensively set forth the qualifications or duties expected of a special education assistant.

In support of its motion for summary judgment, LAUSD submitted the declaration of Dawn Watkins, its "Director in the Integrated Disability Management branch of the Division of Risk Management and Insurance Services." Watkins stated Sedgwick, LAUSD's "third-party administrator of worker's compensation claims," used the Functional Job Analysis while processing Montgomery's workers' compensation claim. That document, Watkins related, "is not reflective of the job duties of a [s]pecial [e]ducation [a]ssistant." She related she "ha[s] directed Sedgwick to pull the document and not use it moving forward." Until she can "create new Functional Job Analysis reports[,]" Watkins has directed Sedgwick "to use the Special Education Assistant Class Description when sending information regarding the essential job functions to a medical provider for review[,]" which "more accurately reflects the essential job functions of the position."

Similarly, at her deposition, Medina testified the Functional Job Analysis is "outdated." According to Medina, the document was used primarily by Sedgwick "to determine whether or not an employee can be accommodated" when returning to work after sustaining an injury covered by workers' compensation. She testified the class description, as opposed to the Functional Job Analysis, defines the requirements for the special education assistant position. She also testified special education assistants can be required to perform duties and satisfy requirements beyond those listed in the Functional Job Analysis.

14

Next, Montgomery argues the deposition testimony by Ericka Johnson and the declaration of Danette Matthews, the special education assistants who ultimately worked the bus aide assignment, "demonstrate[ ] ample triable issues of fact precluding summary judgment." As discussed below, we do not agree with Montgomery's argument, as she misconstrues the evidence on which she relies.

Johnson did not—as Montgomery contends—"attest[ ] to the fact that she herself was told that the essential job qualifications of her job were found in the Functional Job Analysis." Instead, Johnson testified she was never told she needed to satisfy a lifting requirement to work the bus aide assignment. She also testified that she "underst[ood] that the only lifting requirement that [she] had [as a special education assistant] was up to 40 pounds[.]" In addition, she testified that "all that was told to [her] or insinuated to [her] was that [she] had to meet the lifting requirements . . . found on [the Functional Job Analysis]." This testimony simply illustrates the information Johnson received from unspecified persons about the bus aide assignment and her lifting requirements as a special education assistant. However, it does not shed light on the bus aide's required duties, or whether the bus aide would need to lift more than 40 pounds to perform them.

Similarly, Matthews's declaration does not—as Montgomery suggests—reflect the bus aide "was never expected" to lift 40 pounds. In describing her experiences as a bus aide, Matthews stated: (1) she "most often rel[ies] on verbal instruction" to redirect student behavior on the bus; and (2) in her time as a bus aide, she has not had to lift more than 40 pounds. These statements demonstrate Matthews had yet to

15

encounter a scenario requiring her to lift a student on the bus. They do not, however, contradict the class description, which requires that special education assistants have sufficient strength to lift students of various weights. Nor do her statements controvert LAUSD's evidence showing that a situation may arise where the bus aide would need to perform the lifting function to meet student needs.

Third, Montgomery argues summary judgment was improper because, at her deposition, Assistant Principal Martinez "stated that the lifting requirement was not an essential part of [Montgomery's] job, and that her concerns were not necessarily about [Montgomery's] job restrictions." In addition, Montgomery asserts Assistant Principal Martinez "attest[ed] . . . that she does not necessarily believe that [Montgomery's] restrictions . . . necessarily precluded her from performing the bus role." Again, we reject Montgomery's contention because she misconstrues the evidence on which it is based.

When asked about the bus aide's lifting duties, Assistant Principal Martinez testified the bus aide was expected to "support[ ] [students] in getting up . . . if they fell or if they're on the floor." She testified that if a student was on the floor of the bus because they fell down or were tantrumming, the student "could pose a safety concern[.]" Consequently, Assistant Principal Martinez stated, "it is the duty of the [special education] assistant . . . to support the student to get back on their seat." When asked what she meant by "support," she testified that although she did not expect the bus aide to "carry [the student] literally[,]" the aide would "have to help them up[,]" which would require "bending over and lifting the weight, part of the weight of

16

that student." Then, when asked whether "it is required for a bus aide to be able to lift 40 pounds[,]" she responded: "I don't know, quite frankly . . . if it's a requirement. The expectation is safety."

Immediately thereafter, Montgomery's counsel asked why Montgomery's lifting restriction was "an impediment to her receiving the bus aide hours[.]" Assistant Principal Martinez answered: "I don't think that was my biggest concern, although it was a concern." When asked why she was concerned with the lifting restriction, she explained: "[W]hen a situation arises, things happen fast. And when you're trying to keep a student safe, you go above and beyond. [¶] And so sometimes you end up doing things . . . like lifting over 40 pounds because you want to keep the students safe. And I've seen that happen time and time again, staff doing things that maybe they shouldn't do because they care about the kids." Montgomery's counsel then asked: "So it wasn't really an essential part of her job to be lifting over 40 pounds, it was just something that might come up; right?" Assistant Principal Martinez responded: "Right."

Viewed in context, Assistant Principal Martinez's statements reflect her views that: (1) if a student was on the floor of the bus, the bus aide was expected to assist the student in getting up and returning to his or her seat to ensure the student's safety; (2) in so doing, the bus aide may not have to lift the student completely off the ground, but would need bend over, lift the student upward, and support the student's weight; (3) among other concerns, Assistant Principal Martinez was concerned whether Montgomery could keep students safe on the bus without violating her lifting restriction; and (4) the bus aide might not have to perform the lifting function regularly, but may encounter a situation where he or she winds up lifting more than

17

40 pounds while trying to keep a student safe on the bus. Therefore, contrary to Montgomery's argument, Assistant Principal Martinez did not testify "the lifting requirement was not an essential part of [Montgomery's] job[,]" that "her concerns were not necessarily about [Montgomery's] job restrictions[,]" or that she "d[id] not necessarily believe that [Montgomery's] restrictions . . . necessarily precluded her from performing the bus [aide] role."

Finally, Montgomery contends she has shown the existence of a triable issue of fact regarding whether she can perform the essential functions of the bus aide role because she "was . . . permitted and required to ride [a bus] with her classroom on field trips[.]" We are not persuaded by her argument. As discussed below, LAUSD's uncontroverted evidence reflects Montgomery's ability to ride on the bus for field trips does not—as she suggests—evince her ability to perform the essential functions of the bus aide assignment.

At her deposition, Medina testified that special education assistants assigned to ride a bus for a class field trip must be qualified to perform the position's duties as necessary to meet student needs on the bus. According to Medina, Montgomery would not be able to perform those duties on a field trip bus. She testified that a bus aide on a field trip should be able to lift more than 40 pounds "[i]f the students required it." Nonetheless, Medina opined that a special education assistant with Montgomery's restrictions could still ride on a field trip bus because the classroom teacher is required to be on the bus for field trips, and could assist in addressing the students' needs. By contrast, she testified, the special education assistant working the bus aide assignment is accompanied only by the bus driver.

18

Consequently, Medina's testimony shows Montgomery was allowed to ride the bus on field trips because her restrictions could be accommodated in those circumstances, and not because she could perform all the duties required of a special education assistant on a bus. In the desired assignment, however, her restrictions cannot be accommodated in the same way. Indeed, Medina testified that, for purposes of the bus aide assignment, no reasonable accommodation was available for a special education assistant who cannot lift the students on the bus.

Accordingly, Montgomery has not shown there are any triable issues of fact. Thus, the trial court correctly determined her first cause of action fails as a matter of law, as LAUSD produced uncontroverted evidence showing she cannot satisfy the second element of a prima facie case for disability discrimination.

## B. Failure to Provide Reasonable Accommodation

"A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires. [Citation.] FEHA requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation. [Citation.] The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." (*Nealy*, *supra*, 234 Cal.App.4th at p. 373.)

The showing required to satisfy the second element of a reasonable accommodation claim is "identical to that required" for the second element of a prima facie case for disability

discrimination. (*Nealy*, *supra*, 234 Cal.App.4th at p. 378.) Accordingly, as a matter of law, Montgomery's second cause of action fails for the same reason her first cause of action fails.

## C. Failure to Engage in Interactive Process

"'Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability.' [Citations.] FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions. [Citation.] [¶] To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred [or should have occurred]." (*Nealy*, *supra*, 234 Cal.App.4th at p. 379; see also *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 984 [an employee asserting an interactive process claim "bears the burden of proving a reasonable accommodation was available before the employer can be held liable under [Government Code, section 12940, subdivision (n)"].)[3]

---

3    Citing *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 971 (*Swanson*), Montgomery asserts "[t]he failure to [engage in the interactive] process leads to liability regardless of whether there is a reasonable accommodation available or not . . . ." Her contention is meritless. At no point in its analysis of the plaintiff's interactive process claim did the *Swanson* court hold or otherwise suggest that an employee need not demonstrate the availability of a reasonable accommodation at the time the interactive process occurred, or should have occurred, in order for liability to attach under Government Code section 12940, subdivision (n). (See *Swanson*, *supra*, at pp. 971-972.)

As noted above, Medina testified at her deposition that, for purposes of the bus aide assignment, no reasonable accommodation was available for a special education assistant who cannot lift the students on the bus. Based on this evidence, LAUSD has satisfied its burden of showing Montgomery cannot establish an essential element of her interactive process claim. The burden therefore shifted to Montgomery to show the existence of an issue of triable fact. (Code Civ. Proc., § 437c subd. (p)(2).) In her appellate briefs, however, Montgomery has not cited—and we could not locate—any evidence in the record showing the existence of a reasonable accommodation that would have allowed her to perform the essential functions of the bus aide assignment with her work restrictions.

Accordingly, we conclude the trial court correctly determined Montgomery's third cause of action fails as a matter of law, as LAUSD produced uncontroverted evidence showing she cannot establish an essential element of a claim for failure to engage in the interactive process.[4]

---

[4] Montgomery also contends the trial court abused its discretion by failing to sustain her objections to the declaration of Rachel Shaw offered in support of LAUSD's motion for summary judgment. We need not address this contention because, even assuming the trial court erred by failing to sustain the objections identified in Montgomery's opening brief, she neither argued nor demonstrated prejudice from any error. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [a party challenging a trial court's evidentiary rulings on summary judgment has two burdens on appeal—to show affirmatively the rulings were error and to establish prejudice].) As discussed above, even if Shaw's declaration had been excluded, the record contains ample other evidence showing LAUSD was entitled to summary judgment.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.[5]

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, Acting P. J.

We concur:

COLLINS, J.

DAUM, J.*

---

[5] Our Supreme Court has held that "[a]n appellate court may not award costs or fees on appeal to a prevailing FEHA defendant without first determining that the plaintiff's action was frivolous, unreasonable, or groundless when brought, or that the plaintiff continued to litigate after it clearly became so." (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 950-951.) LAUSD, the prevailing FEHA defendant, has not asked us to determine that Montgomery's action was at any point frivolous, unreasonable, or groundless.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.